Stone et al. *v.* Montgomery and wife.

H. L. STONE et al. *v.* ROBERT H. MONTGOMERY and WIFE.

1. HUSBAND AND WIFE: CONVEYANCE BY WIFE OF HER ESTATE TO SECURE DEBTS. —It is no objection to the validity of a conveyance by the wife of her separate estate, to secure the payment of advances made to her, that the particular form prescribed in the deed in which the advances were to be made, was not pursued by the husband intrusted with the management of the business, and the creditor, if they acted in good faith, and substantially carried out the agreement to which the wife had assented.

2. SAME: SAME.—The wife may bind her separate estate, by deed in trust, or mortgage, as a security for the debts of her husband.

3. SAME: EVIDENCE: OFFICER INCOMPETENT WITNESS TO FALSIFY HIS OFFICIAL ACT.—An officer taking and certifying the acknowledgment of a married woman to a conveyance of her separate estate, is an incompetent witness to impeach the validity of the conveyance, by proving that the statements in his official certificate are false. See *Planters' Bank* v. *Walker*, 3 S. & M. 409; 3 Phil. Ev. (C. & H. note), 1090, 2 edit.

4. SAME: CERTIFICATE OF ACKNOWLEDGMENT OF WIFE: SURPLUSAGE.—If the words, "and in bar of her dower," be added to a certificate of the acknowledgment of a *feme covert* to a conveyance of her separate estate, and which is regular and formal in all other respects, they will not limit or restrict the conveyance to a mere dower interest:—the acknowledgment being complete without them, they will be treated as surplusage.

5. SAME: JOINT DEED OF HUSBAND AND WIFE: WHAT IS.—A deed which purports on its face to be a conveyance of her separate estate by the wife, with the consent of her husband, and which is signed, and sealed, and acknowledged by both of them, is good, notwithstanding the husband does not appear in the body of the deed to be a grantor. See *Armstrong* v. *Stovall*, 26 Miss. R. 275.

APPEAL from the District Chancery Court at Mississippi City. Hon. B. C. Buckley, vice-chancellor.

The appellees filed their bill in the court below against H. L. Stone and Jno. A. Roberts, for the purpose of procuring a perpetual injunction against a sale of certain real estate and a slave, conveyed by the complainant, Mrs. Montgomery, to Roberts as trustee, to secure certain debts due to H. L. Stone.

The bill alleges that the property conveyed was the separate estate of Mrs. Montgomery, held under the laws of this State, and

that previous to the 23d of April, 1852 (the date of the deed in trust), R. H. Montgomery, the husband, was indebted to H. L. Stone to the amount of $1400. " That there were some moneyed arrangements made and agreed on by your oratrix and the said Henry L. Stone, on the 23d day of April, 1852," and that she then executed the deed in trust in controversy. " That it was stipulated, among other things, that the said H. L. Stone was to furnish" to Mrs. Montgomery " seven certain acceptances of H. L. Stone & Co. for the amounts, and due at the times specified in the said deed, which is made an exhibit, amounting in the aggregate for $5575 08 ; and that Mrs. Montgomery, for the acceptances, executed her seven notes, with her husband as security, for the same amounts, and falling due at the same periods as the said acceptances."

" That the said Stone only furnished in cash the sum of $2500," and " that these acceptances and accommodations, were not for the private use and benefit of Mrs. Montgomery, as would appear in said deed in trust, but for and on account of said R. H. Montgomery, and that she never received one cent of said money." " That she was a *feme covert*, the wife of said R. H. Montgomery, and that she never intended to involve or incumber her estate, or in any way to become the surety of R. H. Montgomery. That she was of opinion that giving the deed of trust on her property was a mere matter of form, and was so advised by her husband, to whom she had to look for advice ; and that if she had understood the purport and effect of said deed, she never would have signed it."

It is further alleged, that Mrs. Montgomery " was not examined separate and apart from her husband, but that the signing and acknowledgment was made and done in his presence and hearing, and not out of his presence," as certified by the commissioner who took the acknowledgment. That " it was all done in the said commissioner's office, in the presence and hearing of each other, and she was not asked if she signed, sealed, and delivered the same as of her own voluntary act and deed, free from all threats or compulsion from her said husband." It is further averred that the deed was never delivered by Mrs. Montgomery.

Special interrogatories, requiring answers as to all the matters charged in the bill, were also framed.

The deed in trust, which was made an exhibit to the bill, recited that it was made "between Mrs. Allison Montgomery, wife of Robert H. Montgomery, and assisted by the said Robert H., of the first part, and H. L. Stone, of the second part," &c., and continued as follows : " That it has been agreed between the said Allison Montgomery (by and with the approbation and consent of her said husband) and the said H. L. Stone, that for the purpose of accommodating the said Allison Montgomery, and to enable her to effect certain financial arrangements desirable on her part, and approved of by her husband, the said H. L. Stone has agreed to furnish, and by these presents doth furnish and deliver to the said Allison Montgomery, the seven certain acceptances of the commercial house of H. L. Stone & Co.," viz. : three acceptances for \$833 33⅓, each and all due and payable on the 1st day of October next ; one for \$779 56, and one for \$757 42, both due 21st of October next ; one for \$779 57, and one for \$758 53, both due 31st of October next, making in the aggregate \$5575 08 ; " and to pay and satisfy said Stone for his acceptances aforesaid, the said Allison Montgomery doth agree to execute and deliver, and by these presents doth execute and deliver to the said H. L. Stone & Co., her seven promissory notes, as follows." The notes described are for the same amounts, and falling due at the same times as the acceptances above set out ; and it is also stated that they are signed by R. H. Montgomery as surety.

The deed then proceeds : " Now, to secure the full and final payment of all of said promissory notes," &c., " the said Allison Montgomery, by and with the consent of her husband, and for and in consideration of the premises aforesaid, and as part of said agreement, * * * doth by these presents grant, bargain, sell, and convey," &c., describing the property.

The deed then provides for a sale by the trustee upon a default being made in the payment of the notes, and is signed and sealed by Montgomery and wife, by Stone, and the trustee.

The certificate of acknowledgment recites that all the makers of the deed appeared before the commissioner, and " acknowledged that they signed, sealed, and delivered the same as their voluntary act and deed, for the uses, purposes, and considerations therein named, and on the day and .date therein set forth ; and the said

Mistress Allison Montgomery, wife of said Robert H. Montgomery, did moreover, on a private examination made of her by me, apart from her husband, acknowledge that she signed, sealed, and delivered the same as her voluntary act and deed, and freely, without any fear, threats, or compulsion of her said husband, and in bar of her dower. Witness my hand," &c.

The answer, denies all the allegations of the bill upon which complainants rely to annul the sale, and in reference to the consideration of the deed in trust, makes the following statement : that said R. H. Montgomery was indebted to Stone in the sum of $1400, which, with interest up to the 21st of October, 1853, amounted to $1509 47, and the debt was secured by a deed in trust executed by Montgomery and wife, on the same property conveyed in the deed now in controversy; and said R. H. Montgomery was indebted to Stone in a further sum, amounting, principal and interest, to     day of October, 1852, to about $1550, and being unable to make payment, and wishing for an extension of time, and for a further advance of $2500, to enable him to carry on his hotel at Pass Christian, Stone agreed to give the extension and make the advance, if he and his wife would execute the deed in controversy, to secure all the aforesaid debts; that this agreement was finally consummated, and the deed executed upon that consideration, and the said debts and deed of trust cancelled; that he advanced the $2500, as he agreed to do.

The answer states that the seven acceptances of bills, drawn by R. H. Montgomery, were made by H. L. Stone & Co. in favor of H. L. Stone, but that they were never used; and they are filed as exhibits to the answer.

The answer insists, that the certificate of the commissioner who took the acknowledgment, is conclusive, and cannot be impeached, except for fraud or duress.

The complainants, afterwards, filed an amended bill, in which it is charged that the deed is void as to Mrs. Montgomery, because it purports to convey all her interest in her separate estate, and the acknowledgment only purports to convey her dower in said property. And, it is further stated, that Mrs. M. held said property in fee simple, as her separate estate, under the laws of this State; and that she never had any dower interest in it; that the certificate

of the commissioner is fraudulent and false, so far as it relates to her acknowledgment and primary examination; and that it was so written by the commissioner with the approbation of Roberts, the trustee and agent of Stone; that Mrs. Montgomery "did not sign, seal, and deliver said deed to said Roberts, as alleged in said certificate; but, on the contrary, she did sign, seal, and deliver said deed, under the marital influence of her said husband, who was present with her, and said John A. Roberts, at the office of said commissioner, when said acknowledgment was made by her, and written out by said commissioner."

The answer denied all the allegations of the amended bill. The original bill was sworn to by R. H. Montgomery; and the amended bill was not sworn to at all. The deed in trust was executed on the part of Stone, by Roberts, the trustee, as his agent; and it also appeared, from the answers of the defendants, that Roberts was the general agent of Stone, and conducted the negotiations which resulted in the giving of the deed in trust.

The deposition of William Shannon, a commissioner of this State, residing in New Orleans, and before whom the acknowledgment was made, was taken on behalf of complainants. The deposition proves that Roberts, R. H. Montgomery, and Mrs. Montgomery, came together to his office for the purpose of making the acknowledgment, and that he took Mrs. M.'s acknowledgment while Roberts and Montgomery were in his office talking together; but that he thought that Mrs. Montgomery might have refused to execute the deed, on his examination, without being heard by her husband. The witness also testified that the only question he asked Mrs. M. was, whether she signed the deed as her voluntary act and deed? and she answered she did; and that he proposed to read the deed to her, and she said that she was acquainted with its contents.

The defendants moved to suppress the deposition, which was refused; and, on final hearing, the vice-chancellor declared the deed void as to Mrs. Montgomery, and granted a perpetual injunction against a sale of her property thereunder.

From this decree defendants appealed.

*Champlin* and *Adams,* for appellants,
Filed an elaborate brief.

*W. P. Harris*, on same side.

There is not to be found in the record, anything which can be said to justify the charge of fraud. There is, in fact, no attempt to prove it. The entire case rests upon an attempt to establish constructive duress, by showing that the husband was present at the examination of the wife by the commissioner. Whether the wife, in fact, signed the deed unwillingly, does not appear even by the bill, for she did not swear to that; and, when we shall have summed up the proof, we will be forced to declare, that it amounts to a feeble attempt to prove a mere omission, to fulfil one of the conditions required by law to effectuate a conveyance of her property by a married woman, with no design, on the part of the officer, to deceive, to defraud, or to falsify.

Aside from the question which the record presents, as to the propriety of allowing the commissioner's evidence to be taken, in order to impeach his certificate, there is really no difficulty in the case. The testimony itself is insufficient, and fails to establish the omission complained of.

Every one will admit that, if it is competent thus to attack the official certificate, thus to substitute the memory of the officer for the official record made at the time, the evidence should possess the highest degree of certainty, in order to overturn the certificate. If it leaves a doubt on the mind, if it is inconclusive, the certificate ought to prevail. The certificate is part, and an essential part, of the execution of the deed. The statute requires it to be indorsed on the deed; the conveyance is ineffectual without it. It is not only the primary and indispensable evidence of the facts it recites, but it is part of the act of passing title. To that the purchaser is to look to ascertain whether title has passed. From its very nature, it was designed to take the place of all other evidence touching the fact.

In the language of the court, in *Jourdan* v. *Jourdan*, "to that the world is to look, and to nothing else." 9 S. & R. 268. It is not, therefore, in the nature of mere *prima facie* evidence, sufficient, unless contradicted; and, certainly, not merely evidence to be weighed against other evidence.

The case rests, as we have stated, upon the deposition of the commissioner, taken to prove that his certificate is false, and the

witness, to the direct question, whether his certificate is true literally, answers that it was true. The testimony is directed to the point, whether the husband was present when the examination was taken. And it is impossible for the court, from that testimony, to affirm that he was; and, unless the court can affirm that he was present, of course the certificate must prevail.

The evidence is, that the husband was in the office of the commissioner at the time the wife made her acknowledgment there; but we are not informed as to the size of the office, whether it consists of one or two rooms, or of anything touching the interior structure and arrangement.

The conditions of the law may be fulfilled, although the husband and wife may be under the same roof, in the same house, or in the same office.

The commissioner swears that the husband went aside to another part or portion of the office, out of hearing, when the wife was being examined. Does this court judicially know that the interior arrangement of that office in New Orleans, was such, that it did not admit of the wife's being examined apart from her husband?

Can it be said that the certificate of the officer, whose fidelity is not impeached, is false, in stating that a separate examination took place, when the only evidence brought to impeach it is the oath of the officer, who swears that the husband went aside, out of hearing, and that the certificate is literally true?

It appears that the commissioner was examined, as to the questions he put to the wife, and the answers she made. No adjudicated case can be found to sanction this inquiry. If it is admissible to put the officer on the stand with a view to ascertain from him whether or not he put proper questions, or in other words, with the view merely to ascertain whether he performed his duty, in the manner of examining the wife, and thus to found an objection to the deed, the value of the certificate, in its essential character, is destroyed. This is to substitute the memory of the officer for his official record. No one would accept a title liable to be thus assailed whenever a controversy arose respecting it.

The statute prescribes no form of interrogation; the officer may adopt his own method to arrive at the important fact, whether the wife is acting "willingly and freely," and not under fear. The

object of the privy examination is to afford her the opportunity to state this. The officer need not ask a question, if the wife, on being taken apart from her husband, states that she knows the contents and character of the deed, and executes it freely and willingly, and not from fear. But this inquiry is a gross violation of all precedent, and should not have been allowed.

It will at once occur to the court that the decision of this question, as to the extent to, and the circumstances under which, parol evidence may be resorted to to controvert the certificate of the privy examination of a married woman, is of very great importance.

The authorities, in regard to the question as to the admissibility of parol evidence, to contradict the official certificate of the privy examination of a married woman, confine the admission of such evidence, to cases in which actual fraud and duress, or mental incapacity, is shown. *Schrader* v. *Decker*, 9 Barr. 14; 15 Serg. & Raw. 72; *Watson* v. *Baily*, 1 Binney, 640; 3 Harris & McHenry, 321. And these authorities require that the purchaser should participate in the fraud.

Those cases in which certificates have been held to be merely *prima facie* evidences, are those in which the certificate is required to authorize registration, or, to authenticate probate of deeds, so as to dispense with the primary proof, by production of the original and proof of execution. The certificate of the privy examination does not occupy this relation to the deed; it is part of the execution, and is primary and indispensible. To give it the character of mere *prima facie* evidence is to destroy its character. To say that, it is merely sufficient until contradicted by parol evidence, is to stultify the Legislature.

The evidence in this case was not only clearly insufficient, but it was not a case in which such evidence ought to have been received at all. There is but one safe rule on the subject, and that is, that where no fraud, or actual duress, or forgery, is shown, the certificate is conclusive, and no inquiry can be allowed to go further; otherwise, all confidence in titles must be destroyed.

The examination is in its nature judicial, and the certificate of it by the officer, must be regarded as paramount to the memory of the officer.

There are certain positions taken here by the counsel for the ap-

pellees, which were not taken in the court below, and not relied on by the complainants in their bill.

1st. That the married woman's law requires that the deed conveying her property, should be "executed jointly" with her husband; and in the deed, in this instance, though signed, sealed, and acknowledged by the husband, he is not joined as a grantor.

The object of uniting the husband in the deed is simply to induce his concurrence in the act. The object is not to obtain title from him, but to obtain evidence of his assent. In this case, the husband's name is introduced into the deed, and he is stated to advise, assist and consent, and actually executes the deed. The substantial design of the statute is fully preserved. In fact, the literal terms of the statute have been complied with. The husband did execute the deed jointly with the wife.

2d. It is now insisted that the defendant, Stone, did not comply with the contract, and did not furnish to Mrs. M. the acceptances, as stipulated. It will be obvious to the court, on reading the bill, that there is an admission, by the complainants, that the "moneyed arrangements" had reference to past indebtedness; and it will further appear from the bill, that the ground of complaint was, that these "moneyed arrangements, on the 23d of April, 1852," were not for the benefit of the wife, but for the husband. On this point the court is referred to its former decisions. *James* v. *Fisk*, 9 Sm. & M. 144; *Sessions* v. *Bacon*, 23 Miss. 272.

The surplus words at the conclusion of Shannon's certificate, "and in bar of her dower," do not affect the certificate, nor alter the body of the deed. The words seem to have been added by mistake.

*George L. Potter*, for appellees.

This was a bill filed to enjoin a sale of the separate property of Mrs. Montgomery, consisting of her dwelling and slave, under a deed of trust; and to cancel said deed. The vice-chancellor decreed the relief, and defendants appealed.

The grounds assumed in the original bill are these:

1. Stone, the usee in the deed, was to furnish her with seven acceptances of his firm of Stone & Co., for which acceptances she executed to him her seven notes, also signed by her husband, being

the notes to secure which the deed was given.   These acceptances were to be for the aggregate sum of $5575 08.   She avers that she received none of the acceptances ; but admits that Stone paid her $2500 cash.   And yet he attempts to enforce the deed for the whole amount of the notes.

The deed of trust is an exhibit to the bill.   It recites the agreement of Stone to furnish " to the said (Mrs.) Allison Montgomery" said seven acceptances ; and that " to pay and satisfy said Stone for his acceptances," Mrs. Montgomery had executed her seven notes, with her husband as surety.

The answer of Stone admits that he never gave to Mrs. Montgomery any of the acceptances for which the trust notes were executed ; and that there was, in fact, no consideration for those notes, unless the allegations of a previous indebtedness, which he sets up, but does not prove, can be regarded as a sufficient consideration.

That alleged indebtedness, is said to be a note of Mrs. Montgomery and her husband, amounting with interest to $1559 13 ; two notes of Montgomery alone amounting with interest to the sum of $1509 47, and which the answer avers were the consideration of the third and fourth notes specified in the deed of trust ; and the other three notes, he avers, were for cash advanced to Mrs. Montgomery and her husband, less the discount reserved, and less $250 paid, for Montgomery, as premiums for insurance.   And he avers that the $2500 cash advance, was loaned to Montgomery.   He avers that the deed of trust was in fact executed to obtain time on those debts then past due, and to obtain that cash advance to Montgomery.   The answer of Roberts, the trustee, refers to the answer of Stone for a statement of the consideration of the notes.

It thus appears agreed on both sides, that the defendants were not entitled to enforce the deed, upon the transaction therein stated, because the notes of Mrs. Montgomery, to secure which the deed was given, were without consideration—the consideration expressed in the deed.   The deed recites that the notes were given for the seven specified acceptances of Stone & Co., which Stone was to obtain and deliver to Mrs. Montgomery for her use and benefit. Stone admits that he retained those acceptances in his own possession, and never delivered any of them to her.   It would seem that

this admission should end the case; for it is plain that a party cannot enforce a deed of trust, when he comes and admits that the notes it was given to secure, are null for want of consideration. But they say there were previous transactions, anterior to and outside of the contract recited in the deed of trust; one transaction with Montgomery and wife, and several with Montgomery alone; and that upon those transactions, prior to, and wholly distinct, and independent of the contract on which the deed was founded, Stone has some money demand against Montgomery and wife respectively, and that it is proper to enforce payment of these claims by a sale, under the deed, of Mrs. Montgomery's property.

We object against this attempt to subject the property of the wife to pay the debts of the husband. The deed can be enforced on no such pretexts. It cannot be enforced to pay any debts, not embraced by its provisions. Nor can those notes be made obligatory by proof of such prior indebtedness. The deed recites, that the notes were given in payment for those seven acceptances which Stone agreed to furnish to Mrs. Montgomery, and which he admits he did not deliver to her. The deed recites, that the acceptances were to be given, "for the purpose of accommodating the said (Mrs.) Allison Montgomery, and to enable her to effect certain financial arrangements desirable on her part;" and it is perfectly clear that a party cannot obtain the notes of a married woman, on a promise to furnish accommodation acceptances for them, and then turn round, retain the acceptances, and claim to hold the notes in payment of a previous debt, and especially of a debt due from the husband only. Mark the financial skill developed by the scheme. The pretence is that Mrs. Montgomery owed Stone some $1500, and that Montgomery owed him a large sum. By a delusive promise he obtains her notes for some $5600, and now claims that she shall pay the whole amount, and thus pay the debt of her husband.

We say that Stone cannot retain the notes, or enforce the deed, even for the sum of $1500 alleged to be due from her. And there are several good reasons why he cannot. First, Stone must stand or fall by the deed; he cannot contradict the contract it sets forth, nor show that the notes were not given, as the deed asserts they were, on account of the promised acceptances. He cannot uphold

the notes by showing a prior debt for which, as the deed shows, they were not given; and especially he cannot give validity to the notes of the wife, by showing a previous debt due from the husband. But if he could do so, his pretence must fail, for there is no proof to sustain his assertion, not responsive to the bill, that either Montgomery or his wife owed him anything: and it was, perhaps, legally impossible that the wife could owe him.   Certain it is, that he cannot rely on such previous debts, until he shows they existed.

If such a claim might be sustained in ordinary cases, it cannot be against a *feme covert*.   Her notes were obtained on a promise to furnish acceptances for her accommodation.   She might be willing to pledge her estate to pay notes thus given for her own benefit; and accordingly she executes a deed of trust to secure them.   And when the deed is thus obtained, the creditor, with or without collusion with the husband, neglects to give the acceptances, and claims to enforce the notes against her estate to pay an alleged debt due from her, and a debt due from her husband.   If the plan succeeds, her estate is subjected to pay demands for which it was not pledged, and to pay which she would never have consented to pledge it.   Of what avail are the guards the law has provided for her security, if the deed, obtained under such circumstances, may be enforced for a purpose she never contemplated?   It is idle to say she may not be compelled to convey her estate, if she may thus be deluded out of it.   The notes were nullities, for want of consideration, and the deed given to secure them is, of course, inoperative.

2.  The bill avers that she was not examined, as to her execution of the deed, separate and apart from her husband; and never delivered said deed.   The amended bill avers that the certificate of her privy examination, &c., is false and fraudulent; that, in truth, she executed the deed, not voluntarily, but under marital influence; and her examination was not private or apart from her husband, but in his presence, and in the presence of Roberts, the trustee, and agent of Stone.

The deposition of Shannon, the commissioner who certified her acknowledgment, says, Montgomery accompanied his wife to the office, and went aside to another portion of the office, while witness took her acknowledgment.   He says that she acknowledged first, and then Montgomery, and Stone, the trustee, came forward and

acknowledged on their part, they both being in the office at the time. He does not think Montgomery heard what witness said to her; and she could have objected without Montgomery hearing her. He says the only question he asked her was, " whether she signed the same as her voluntary act and deed."

The motion of defendants to suppress this deposition was overruled.

Two questions are made: 1. That the commissioner cannot be heard to contradict his certificate. 2. That no proof can be alleged against it. Both may be considered together. The commissioner is a mere ministerial officer; there is no more reason why he may not be heard to prove how the fact was, than there is when a sheriff is called to contradict his return. We might grant that no such proof could be offered against an innocent party, who had purchased without notice, and yet justify the admission of this proof; for it is shown, and the answers admit, that Roberts was the agent, as well as trustee, of Stone; and it is proved that he was present in the room with Montgomery, when the acknowledgment was taken. Of course he knew, and thus Stone, through his agent, had notice that there was no private examination of Mrs. Stone; and there is no pretence to say either was deluded by the certificate.

But it is not easy to see on what ground this plea of an innocent purchaser can estop the wife from proving the fact. Whenever the wife assails such a certificate, her proposition is that she was not examined, &c., as required by law, and that so her estate did not pass by the pretended deed. If you say she may not prove the facts, and thus show the alleged deed is null, you assert that she may be deprived of her estate by the false certificate of the very officer who was appointed by law to protect her. But, you say, the *bona fide* purchaser must be protected. We ask, why protect him rather than the wife? Why protect the free and capable, to the prejudice of the wife, whom the law recognizes as subject to a certain extent to the dominion of her husband, and therefore incapable of herself to act freely? The purchaser may consider the risk he incurs in purchasing the property of a wife, and may refrain from purchasing; whilst she, placed under compulsion, may be sometimes constrained unwillingly to sell. As between the two, the law should protect her whom it has placed under subjection, and who may need protection.

The officer was not called here to deny his certificate as to privy examination, but rather to state the facts on which he formed the opinion that there was a privy examination. He seems to have thought the examination was private, when the husband sat a little apart in the same room. It is needless to say he was mistaken. The wife, thus in the view of the husband, and under his nod or frown, was as entirely under his control as she would have been if he stood at her side. An attesting witness is said to sign "in the presence" of the testator, if he signs within his view; and it is idle to pretend that this examination was not in the very presence of the husband.

As the agent and trustee of Stone was present, and saw how the whole matter was transacted, he cannot object to our proving what he knew at the time, and thus showing he is not a purchaser without notice of this fatal defect in his deed. The proof was therefore competent, and it shows the nullity of the deed.

The witness also says he did not ask Mrs. Montgomery whether she sealed and delivered the instrument. His inquiry was limited to the matter of signing. In other words, he but asked if she had done the first of three things essential to the execution of the deed. It is manifest that this was a fatal blunder. The acknowledgment is an indispensable thing, and it must relate to the execution, the signing, sealing, and delivery of the deed.

The amended bill insists also upon the insufficiency of the certificate in this, that it relates to a dower interest only. The words are, that she acknowledged that she signed, &c., voluntarily, &c., "and in bar of her dower." This is manifestly insufficient to pass the fee of the wife, if defendants may not reject these words as surplusage. We insist there is no pretence to reject them. They are essential, as showing the intent of the wife, and what her acknowledgment actually was. It matters not what the deed is; but the material question is, what did she acknowledge when apart from her husband? She had the fee. Did she acknowledge that she voluntarily conveyed the fee? The commissioner certifies that she did not; but acknowledged only that she executed the deed, "in bar of her dower." The difficulty is, not that she said too much, but that she failed to say enough. She did not say she executed with intent to convey her estate in fee. *Tevis* v. *Richard-*

*son,* 7 T. Mon. 661–2; *Still* v. *Swann,* Litt. Sel. Ca. 156; *Mc-Daniel* v. *Priest,* 12 Missouri, 544.   This latter case, though since overruled, is a persuasive authority.

The statute allows the land and slaves of the wife, to be conveyed only by the joint deed of the husband and wife.   We submit that this deed, as a conveyance of the land and slave, is not the deed of Montgomery; it purports to be *her* deed.   It begins thus: "This deed of trust, between Mrs. Allison Montgomery, wife of Robert H. Montgomery, and assisted by the said Robert," &c. It then recites the contract, and describes the notes.   And then "the said Allison Montgomery, by and with the consent of her said husband," grants and conveys.   The words are: "She doth by these presents grant," &c., the land and slave.   The deed contains also an assignment of certain policies of insurance; and, as to these, the husband unites to transfer them.   Mrs. Montgomery alone, but with the like expressed consent, warrants the title.

Our proposition is, that this deed is inoperative—no deed, as to the husband, because he does not grant or convey; he only assents to a conveyance, by the wife, of her interest.   To test this matter, suppose the husband, with the assent of the wife, thus expressed in the deed, had granted her lands, could there be a pretence that it was her deed?   In *Hawkins* v. *Gould,* the precise case was decided.   The husband and wife were named as parties of the first part.   The husband, "with the consent" of the wife, granted and conveyed her land; and both executed and acknowledged the deed. It was the precise case at bar, except that here the wife conveys with the consent of the husband; whilst there, the husband conveyed, with the consent of the wife.   The deed was held not to pass the estate of the wife, "she not being a grantor in the deed." 3. Harris & Johns. 243.

In *Bruce* v. *Wood,* it was held that the wife must be "a party to the efficient and operative parts of the instrument of conveyance; and it is not sufficient that her name was annexed, as expressing her assent to the act of her husband, and without words showing her formal participation in the granting part of the deed." 1 Met. 542.

In *Agricultural Bank* v. *Rice,* the Supreme Court of the United States said: "In order to convey by grant, the party possessing the

right must be grantor, and use apt and proper words to convey to the grantee; and merely signing and sealing, and acknowledging an instrument, in which another party is grantor, is not sufficient." 4 How. U. S. 241.

In *Purcell* v. *Geshorn*, the wife had, at the end of the deed, relinquished her dower. It was held not to pass her estate, as there was "not a word of grant by the wife, nor anything equivalent to it in all the deed." 17 Ohio, 124.

In such cases, though the deeds are formally executed and acknowledged, it is held they are inoperative, because they contain "no words of grant or release", from the party sought to be charged. *Powell* v. *Monson*, 3 Mason, 347; *Cox* v. *Wells*, 7 Blackf. 410; *Lufkin* v. *Curtis*, 13 Mass. 223.

It is a general rule that, where there are no words of grant, the deed is inoperative, unless there are covenants which may operate by estoppel, &c. *Brown* v. *Manter*, 1 Foster, 529, and cases cited.

The rule declared by these cases is, that a person who joins in no word of grant or covenant, is no party to a deed, though he signs, seals, and delivers the paper, as his act and deed; and that his mere assent to the conveyance, though that consent be embodied in the deed, does not make the instrument his deed. And if it be true, as declared in *Hawkins* v. *Gould*, and *Bruce* v. *Wood*, that the mere consent of the wife, expressed in a deed, duly executed and acknowledged by her, would not make the instrument her deed; and that, because she had used no word of grant, how, in a like case, shall this be declared the deed of Montgomery? In *Hawkins* v. *Gould*, both husband and wife were named as parties of the first part; but, as regards the land and slave, Montgomery nowhere professes to be a party.

In *Lawrence* v. *Heister*, husband and wife joined in a deed conveying her estate. It was duly acknowledged by her, but not by him. The court said: "To pass the interest of the wife in her land, the husband and wife must join in the deed as grantors; and the deed cannot be legally efficient and operative to pass her interest, unless it be acknowledged by the husband; for, without the solemnity of acknowledgment by the husband, it is not his deed or conveyance to pass the inheritance or freehold, or any estate for above seven years." 3 Harris & Johns. 378.

Stone et al. *v.* Montgomery and wife.

In that case, the deed was complete and full evidence of the consent of the husband to the conveyance by his wife; but the court held it was not his deed; and that his deed, as well as that of the wife, was necessary to pass her estate. There must be a joint deed—a grant of the fee by both, or the interest of the wife does not pass.

But this is a compound deed—a grant of the land and slave by the wife; and an assignment of the policies of insurance by both husband and wife. This cannot help the case, but rather impairs it. The fundamental objection, that the husband has not conveyed the land or slave, still remains; and the fact that he did join in transferring the policies, and not in the grant of the land and slave, tends strongly to prove that he did not intend to grant them at all, or that the deed should be operative in that respect against him.

As to Mrs. Montgomery, the deed, if legally formal, was null and wholly inoperative, until it was acknowledged, upon private examination, by her. She was competent, on such private examination, and then only, to speak that paper into being. It depends wholly on her, and on what she says upon such examination. She may say too much; or she may not say enough. If she admits her full execution of the paper, and says it was done by constraint of her husband, she declares too much, and the paper is inoperative. If she say too little, the result is the same, as, if the deed purport to be a grant of her estate, and she fails, on such examination, to admit a grant of her fee, the words are insufficient and null.

If we look to the formal mode of performing the ceremonial, this view will be apparent. On such private examination, the formal mode is to read over the deed to the wife, and to ask her if she thus grants, bargains, sells, &c., freely, &c. If she answers yea, her admission covers the terms of the deed; and she has said no more nor less than the law requires to pass her fee. The question always is, has she said enough, and no more than enough. If, in the matter of such a deed, she answers that she executes it as a relinquishment of her dower, she has not said enough; and you cannot excise her words, and, by cutting them in half, make her say what it does not appear she intended to say. It is a matter wholly within her option; and, if she does not choose to speak the effective words, there is an end of the matter, and nothing is accomplished.

To test this matter fairly, suppose the deed had expressed on its face, just what the certificate shows, an intent to convey a mere dower interest, what would have been the effect? Plainly, her fee would not pass. If she says she grants her dower claim, you cannot say she grants her fee.

The case of a wife is peculiar, and you cannot apply to her the rules by which the acts of free agents are regulated. The statute requires that she shall, under a specified state of circumstances, declare, in substance, certain effective words; and those words, must adopt and ratify the particular instrument upon which the examination is had. She must, in effect, acknowledge the free execution, the signing, sealing, and delivery of the very deed, and for the purposes therein expressed. She may, by her acknowledgment, so qualify the operative words of the deed, as to restrict or wholly annul the apparent effect of the instrument. If, in this case, she had acknowledged the paper as a bill of sale of the slave, or as an assignment of the policies of insurance, could there be a pretence to say she had admitted enough to convey her land?

HANDY, J., delivered the opinion of the court.

The bill in this case was filled by the appellees, to enjoin a sale of certain real estate and a slave, the sole and separate property of Allison Montgomery, the wife of Robert H. Montgomery, and which was embraced in a deed in trust, purporting to be executed by her and her husband, to secure certain debts due upon promissory notes executed by them to the appellant Stone. The object of the bill was also to have the trust deed set aside, and declared inoperative and void, as to the property embraced in it belonging to the wife.

The grounds of objection to the deed stated in the original bill, are as follows,—that the husband was indebted to Stone & Co., in the sum of $1400, and that "there were some moneyed arrangements made between them and the wife, on the 23d April, 1852," and that Montgomery and wife executed a deed of trust upon her separate property, by which it was stipulated that Stone was to furnish her with certain acceptances, amounting to the sum of $5575.08, for which she executed her promissory notes, signed also by her husband, for certain specified sums; but that Stone

only furnished in cash the sum of twenty-five hundred dollars, and that these acceptances were not for the private use and benefit of the wife, but of her husband; that she never intended to become surety for her husband, but believed that giving the deed upon her separate property was a mere matter of form, and was so advised by her husband, and if she had understood the legal effect of the deed, that she never would have executed it.

Further, that the wife was not examined, separate and apart from her husband, in executing the deed, but that she made the acknowledgment in his presence and hearing, and that she was not interrogated whether she executed it, as her voluntary act and deed, free from threats or compulsion of her husband.

It calls upon the defendant to answer specially, among other things, whether the acceptances were for the use of the wife, and whether more than the sum of $2500 was paid to her? whether she understood the purport of the deed? whether she was examined apart from her husband, in executing it, and who was present when it was done? who obtained the acceptances and money, &c.?

The answer of Stone, states the consideration and circumstances of the deed in trust to be as follow: that at the date of the deed, he was the holder of a note made by the wife, as principal, and the husband, as surety, for $1400, secured by deed of trust upon the same property embraced in this deed, which note and deed in trust were agreed to be cancelled, and to form a part of the consideration of this deed; that he was also at the same time the holder of a note of the husband alone, which was agreed to be cancelled and the amount of principal and interest thereof, $1509.47, by agreement of Montgomery and wife, constituted a further part of the consideration of the present deed; that these debts were included in the deed in controversy, in order to extend time of payment to them; and that the residue of the consideration of the deed was made up of the sum of $250, then due by the husband for cash previously advanced for him by Stone, and the sum of $2500, then advanced for him, for the purpose of enabling him to carry on the business of keeping up his hotel; and this extension of time, and new advance of money, were given upon the express agreement, between Montgomery and wife, and Stone, that the indebtedness should be secured by the deed in trust, in controversy; and the deed was accordingly duly executed by them.

It further states that, although when the trust deed was executed, Stone & Co. accepted drafts drawn by Montgomery, for the same amounts as the promissory notes held by Stone, as evidences of his debt, and payable at the same times, yet said drafts were made for his benefit and were never used by the defendant, and are returned and filed with the answer; and it admits that only the sum of $2500 was advanced in cash, at the time of the execution of the deed, but states that the residue of the money for which the notes and deed were executed, was made up of previous indebtedness as above stated; denies that the wife was ignorant of the legal effect of the deed, and insists that the certificate of the officer who took the acknowledgment of the deed, is conclusive as to the facts therein stated, and not to be contradicted by parol evidence, except for fraud or duress; denies that the deed was not signed, sealed and delivered by the wife, as her act and deed, or that the deed was not fully understood by her.

An amended bill was afterwards filed, which alleges that, although the deed purports to convey all the right and title of the wife to the property, yet that her acknowledgment, as taken and certified upon it, shows a release only of her dower in the property, and that the acknowledgment,—being insufficient to convey more than a dower interest, and she having no such interest in the property, —was ineffectual to convey her real interest, and that the deed was, therefore, inoperative and void as to her. It repeats the allegations of the original bill, in relation to the deed not being explained to her at the time she executed it, and as to her voluntary execution of it, and alleges that she executed it under the influence of her husband and in his presence.

These allegations are denied by the defendant's answer to this amended bill.

Upon the hearing, the court decreed that the acknowledgment of the wife was illegal, fraudulent, and void, and, therefore, ordered the deed to be cancelled and the sale of the property under it to be perpetually enjoined; from which decree, this appeal is taken.

Several objections are now urged against the obligatory force of the deed, as to Mrs. Montgomery, which we will proceed to consider.

In the first place, it is alleged that the deed is without conside-

ration, as to Mrs. Montgomery. And the first ground taken in support of that view is, that it appears from the deed that Stone had agreed to furnish and deliver to her seven acceptances, for various sums, amounting to $5575.08, for the purpose of enabling her to make certain financial arrangements; and that, for that consideration, and in order to satisfy him for these acceptances, she, together with her husband, executed her promissory notes for the same sums; and to secure their payment, gave the deed in trust; but, that it is admitted by the answer, that these acceptances were never delivered, and, therefore, that Mrs. Montgomery obtained no benefit from the contract, as agreed upon.

It is true that this is the form of the transaction, as stated in the deed; but it is evident, from the statements of the bill, that the giving of the acceptances was merely a matter of form. The inducement to the execution of the deed, is there stated to be the previous indebtedness of R. H. Montgomery, and that "some moneyed arrangements were made and agreed on by Mrs. Montgomery and Stone," and the agreement in relation to giving the acceptances is also mentioned. But no objection is made that the acceptances were not given in the mode specified in the deed; nor is it alleged what was the character of the "moneyed arrangements" agreed on, and which are stated as having caused the execution of the deed. The complaint is, that the acceptances and accommodations were not for the private use and benefit of Mrs. Montgomery, but for her husband; and that she never intended to become surety for him, and to involve her separate estate on that account; and that, acting under his advice, she considered the execution of the deed as a mere matter of form; and further, that Stone only furnished in cash the sum of $2500. The form of giving the acceptances appears clearly to have been waived, and the objection made to the arrangement is, that it was for the benefit of her husband, and not for her separate and individual use, although it is plain from the statements of the bill, that his indebtedness entered into the transaction, and that the moneyed arrangements were made for his accommodation, and by his instrumentality. Therefore, if the "accommodations" and "moneyed arrangements," were made by Stone in good faith on his part, and in a manner satisfactory to the husband, who was intrusted with the interests of his wife in the transaction,

it is no objection to the validity of it, that the form of giving the acceptances was not carried out.   If the husband carried out the arrangement and effected the object in contemplation, without the acceptances, and without fraud upon the rights of the wife by Stone, the matter stands in the same position, as to Stone's rights, as if the acceptances had been given and been applied to the benefit of the husband.   This appears to be the aspect of the matter as presented by the bill.

But the answer explains fully the "moneyed arrangements," as connected with the previous debts, intended to be made, and shows that the husband and wife were jointly liable to Stone for a debt secured by a deed in trust; that Montgomery was also individually indebted to him on two other notes and an account, and that it was necessary for him to obtain an advance of $2500 for the purpose of carrying on his business; and that, for the purpose of obtaining further time for the payment of these debts, and of giving security for the same, as well as for the sum of $2500 advanced as part of the transaction, the original deed in trust was discharged, the two other notes and account satisfied, and the present deed executed to secure the amount of those debts, together with the sum then advanced in cash : that this was the true character and object of the transaction, and that the acceptances spoken of in the deed in trust were in favor of Stone, and were never used by him, but are returned and filed with the answer.   The original notes and the trust deed, which were discharged by this arrangement, are also returned and filed with the answer.   These exhibits show that the acceptances spoken of were *payable to Stone,* and must have been made for his benefit.   He, therefore, held them as evidences of his debt, in addition to the promissory notes which the deed in trust purports to secure, and they cannot be considered as separate securities, intended for the benefit of Mrs. Montgomery or her husband, and to be held against Stone, but must be considered as part of the arrangement by which the debts then due Stone, and the money then advanced by him, were to be secured by the deed in trust.   This is the character of the transaction as averred in the answer, and rendered probable by the circumstances shown, and the documents exhibited ; and the explanation is not contradicted by the allegations of the original bill, nor denied by the amended bill.   And it

is evident that the objection of want of a sufficient consideration for the deed, is untenable on the ground stated.

But it is again objected, that as the deed states that the acceptances were given *for her accommodation*, &c., it is not sufficient to show that the consideration was an extension of time of payment of her husband's debts, upon her executing a deed to secure the payment. If the acceptances and financial arrangements referred to in the deed, had reference to the payment or security of the debts of her husband, it was entirely competent for her to bind her separate property by her deed duly executed, as a security for those debts. *James* v. *Fisk*, 9 S. & M. 144; *Bacon* v. *Sessions*, 23 Miss. 272. And that appears to have been the real character and intention of the transaction, and the object of "the accommodation," and "desirable financial arrangements," referred to in the deed.

We, therefore, perceive no valid objection to the deed on the ground of want of consideration.

The next objection to the deed is, that the wife's acknowledgment was taken by the officer in the presence of her husband.

The only evidence offered upon this point was the deposition of the officer who took the acknowledgment, and certified that it was made by her on "a private examination, apart from her husband;" and a preliminary question is presented, by the motion made in the court below to suppress this deposition, whether it was competent to examine the officer as a witness, to prove that facts stated in his official certificate, and constituting a part of his official duty, were not true as therein stated.

We are of opinion that the officer could not be examined for such a purpose. His official acts are done and certified under oath, and it would be mischievous in the extreme, to permit such a person to appear as a witness and falsify his own solemn act. Such a course would expose weak or dishonest men to the most dangerous temptations, and render the tenure of property unsafe and precarious, by subjecting the evidences of titles under which it is held to the frail and uncertain memory, or to the corruption, of officers who have in due form certified the regularity of their acts. Upon the same principle which renders a sheriff incompetent as a witness to impeach his return, the deposition of the commissioner who took

and certified the acknowledgment in this case, was inadmissible to contradict and falsify his certificate. *Planters' Bank* v. *Walker*, 3 S. & M. 409 ; 3 Phill. Evid. (Cow. & Hill), 1090, 2d edit.

The motion to suppress this deposition should, therefore, have been sustained.

Again, it is objected that the acknowledgment of the wife, as taken and certified upon the deed, shows a release only of her dower in the property ; and as she had no dower interest in it, and it was her property in fee, that it could not operate as a conveyance of her real interest, and therefore that nothing passed by it.

The certificate of acknowledgment shows, that the husband and wife acknowledged that they signed, sealed, and delivered the deed as their act and deed, and that on the same day, " Mrs. Allison Montgomery, wife of the said Robert H. Montgomery, did, on a private examination made of her, apart from her husband, acknowledge that she signed, sealed, and delivered the same as her voluntary act and deed, and without any fear, threats, or compulsion of her said husband, and in bar of her dower."

It is insisted that these last words—" *and in bar of her dower*"— must be understood as qualifying all that precedes them in the acknowledgment ; and hence, that the purport of the whole acknowledgment, is but a relinquishment of her right of dower. But we do not consider that a just view of the certificate. The first clause of it states that the husband and wife had signed, sealed, and delivered the deed as their act and deed, "*for the uses, purposes, and considerations therein named.*" And the deed on its face purports to convey the property as her estate. Then follows the statement, that upon private examination, apart from her husband, she acknowledged that she executed it as her act and deed, " *and* in bar of her dower." The language of the latter clause must be taken with reference to the preceding clause, and also with reference to the interest intended to be conveyed, as shown by the deed itself ; and so considered, it is not justly susceptible of any other construction than that, on the private examination, she acknowledged that she executed the instrument as her act and deed, for the uses and purposes therein named, which appear by the deed to be a conveyance of the property as belonging to her. As the property was her separate estate, she, therefore, acknow-

ledged that she conveyed it as such, according to the purport of the deed. This was manifestly the object which the parties intended to effect, and the words of the acknowledgment are sufficient for the purpose. The superadded words, "and in bar of her dower," do not restrict or impair the acknowledgment already made, but must be understood as intended to release her right of dower, *in addition to the estate already conveyed.* This is the fair construction of the language used, and these concluding words were, doubtless, used under the impression that her right of dower had to be released in terms, in addition to her acknowledgment that she conveyed her separate estate. But being useless, under the circumstances in which the title to the property stood, and merely in addition to what was previously stated, they are mere surplusage, and cannot limit or affect her acknowledgment as to the conveyance of her sole and separate estate, which was complete without them.

The last objection urged against the deed is, that the husband is not a party grantor, and named as such in the body of it; and, therefore, that it is not the joint deed of husband and wife, and is insufficient, under our statute, to convey her separate property. It would be a sufficient answer to this objection, that it was not set up either in the original nor amended bill. On the contrary, the deed is treated in the pleadings as the joint deed of the husband and wife. But, if the objection had been made in the pleadings, it would be untenable. The property is admitted to belong to the wife, to her sole and separate use; and of course the husband had merely a secondary interest in it. It was her act which was essential to the conveyance. But he signed the deed and acknowledged it as his act and deed, for the purposes stated in it. That was sufficient to show his consent and co-operation in the conveyance in the most certain form; and the reason of the statute, in requiring the conveyance to be made by the joint deed of the husband and wife, is that it may be made with his aid and consent. His signing, delivery, and acknowledgment of the deed, would estop him from setting up any claim to the property against the grantee, and show that the title of the wife was conveyed by his co-operation. Under such circumstances, the deed is sufficient under the statute to convey the wife's estate. *Armstrong* v. *Stovall,* 26 Miss. 275.

With regard to the objection against the validity of the deed on the ground that it was obtained by the undue influence of the husband, there appears to be no evidence to sustain that view, and especially is there no evidence to implicate Stone, or his agent, who attended to the execution of the deed, in any such efforts or intentions.   The objection rests solely on the ground that the husband was present in the commissioner's office, when the acknowledgment of the wife was taken, without any pretence, in fact, that any undue influence was used by the husband.   Indeed the original bill appears to be sworn to by the husband alone, and the amended one, which is not sworn to, must be taken to have emanated from the same source as to its allegations.   There being, therefore, no evidence of any imposition upon the wife, especially by Stone, it would be grossly unjust to deprive him of a security taken by him in good faith, and executed, to all appearance, according to the forms of the law, by an officer charged with the duty of seeing that all the requirements of law were complied with, and to cause him to lose his debt, and this at the instance, and for the benefit of the husband, and upon the ground of a *presumed* undue influence exerted by him upon her in the execution of the deed.

Under these views of the case, the decree is manifestly erroneous; and it is reversed, the injunction dissolved, and the bill dismissed.