Headerick, J.,
delivered the opinion of the. court.
*227 Friedenwald & Co. filed their attachment bill against defendants in the Chancery Court of Memphis on the 29th of June, 1866.
On the 12th of July, ■ 1866, Heidelback, Season-good & Co. filed their attachment bill against the same parties. Attachments were issued and levied upon a house and lot in Memphis as the property of John Mullan. Friedenwald & Co. were doing business in St. Louis, and the defendant, Mullan,.was a dealer in ready-made clothing in Memphis, and was indebted to them by note dated January 3, 1866, and due at ninety days, for $1,754.40. The firm of Heidelback, Seasongood & Co. were doing business in Cincinnati, and the said John Mullan became indebted to them for goods furnished him March 1st, 1866, payable at ninety days, in the sum of $1,114.60. These bills were consolidated and heard together in the Chancery Court. They contain substantially the same allegations, and seek satisfaction of the debts due them, respectively, out of the house and lot charged to have been fradulently conveyed by said Mullan to Patrick Dris-coll, on 17th of January, 1866, and by said Driscoll to Ann Mullan, wife of said John, on the same day, and by said Ann and her husband, on 22nd of June, 1866, to defendant Patrick Eagan. The bills charge that these several conveyances were made to hinder and delay the creditors »of said John Mullan, and are therefore fraudulent and void, and that defendant Eagan knew said Mullan was largely indebted, and that he was disposing of his property to leave the State.
The bills pray that the property attached be sub *228 jected to the satisfaction of their debts. Eagan answers and denies that he knew of any indebtedness to complainants or others by defendants, or that he had any personal knowledge of the conveyances of .the 17th of January, or that they were executed with any fraudulent intent, and denies that they were executed with any such intent, to the best of his information and belief. He denies that the deed to himself was pretended, fraudulent, or void. He states that said property was advertised in the newspapers at Memphis for sale, and was publicly sold, and that he attended said sale, and, without any notice of complainants' debt, purchased the samé at $4,650, the full value of it at the time, and paid the cash for it, and took a deed for it 22nd of June, 1866, which was duly acknowledged by Mul-lan and wife, and registered the 23rd of June, 1866. The bills were taken for confessed against Mullan and wife and Driscoll. Mullan and wife having left the State, and Driscoll having died, the cause was revived against his representatives. It sufficiently appears that no consideration for the conveyance passed from Driscoll to John Mullan, nor from Ann Mullan to Driscoll, and that John Mullan’s object in procuring the title to be made to his wife was to hinder and delay his creditors, but there is no evidence to show that Eagan participated in said fraud, or had any knowledge of it. On the contrary, his deposition was taken and is uncontradicted, and negatives such a conclusion. He states that in June, 1866, he bought the property at auction, Geo. H. Monserrat being auctioneer, and paid ipr it $4,650, and the deed was *229 made by Mullan and wife; that the property was advertised for public sale, that he attended the sale and bid for it, and being the highest bidder it was struck off to him, Mullan and wife being in possession at the time he bought; that he did not know that Mullan owed a cent, and after he bought the property he engaged a lawyer to examine into the title, and he pronounced the title all right; he then paid the money to Monserrat, the auctioneer. He knew nothing of the deeds from Mullan to Driscoll and from Driscoll to Mrs. Mullan. Eagan further states that these transactions were all before the suits were brought, and that he paid the full value of the property, and he took possession of it and has had the possession ever since. He also states that he never had any other business transactions with Mullan than the purchase of the house and lot at auction as before stated.
While it may be conceded that the conveyances to Driscoll by Mullan, and by Driscoll to Mrs. Mullan, were fraudulent as against Mullan’s creditors as between the parties to those conveyances, yet Eagan being a bona fide purchaser for valuable consideration, without notice of the fraudulent intent of his grantors, took a good title by the conveyance, if it was sufficient in its terms and form to convey the title.
The deed to him is impeached for fraud. We are of opinion that the evidence does not sustain the charge, and further, that it is not incumbent upon defendant Eagan upon the pleadings in these causes, in order to avail himself of his defenses, that he should plead in his answer, with technical accuracy, *230 that he is an innocent purchaser without notice, etc. Complainants have no title to the lot of land which they are seeking to establish as superior to that of defendant Eagan, but they are creditors of Mullan seeking satisfaction of their debts out of the lot which they allege has been fraudulently conveyed to Eagan. Eagan denies the fraud, so far as his purchase is concerned, and complainants have failed to prove it so as to implicate him, and must fail in obtaining the relief they seek. But it is further insisted that the deed to Eagan conveys no title because it does not purport on its face to be a conveyance of the husband jointly with the wife.
The deed from Driscoll to Ann Mullan contains this provision: “The said Ann Mullan to have the right to convey said premises at any time by joint deed with her said husband.” The deed from Ann Mullan to Eagan recites the fact that she is the wife of John Mullan, but in the deed the words of -conveyance, and covenants of seisin and warranty, purport to be used and made by her only. But the testimo-nium, clause is as follows; “In testimony whereof, the said Ann Mullan and John Mullan have hereunto set their hands and affixed their seals the day and year above written.”
The deed was acknowledged in proper form by both John and Ann Mullan, and was registered the day after it bears date. But the argument for complainants is that the wife, under the conveyance to her, had power to convey only “by joint deed with her said husband,” and that to .make her conveyance oper *231 ative under this power her deed must not only contain words of conveyance by her, but must also purport upon its face to be a conveyance by her husband. The precise language of the power to convey is, “the said Ann Mullan to have the right to convey said premises at any time by joint deed with her said husband.” The estate is conveyed - solely to the wife; the husband, by the terms of the deed, took no title to it. It is the wife who is empowered to convey, and the mode designated is by joint deed with the husband.
The purpose or reason why the law requires that the husband should join in the deed with his wife is, that his assent to the conveyance might appear, and that it might also appear that he was present to protect her from imposition. 3 Head, 388. Why should he, upon the face of the deed, be required to say that he conveys, and 'is seised and possessed, and has a good right to convey, when these covenants as to land belonging to his wife are not true? All that is required of him to signify his assent and presence is his signature. That binds him to all the recitals contained in the instrument, and makes it as much his deed or obligation as if his name was inserted in the body of it. By his signing, delivery and acknowledgement of the deed he would be forever es-topped from setting up any claim to the property conveyed. 35 Miss., 107; 9 Allen’s (Mass.) R., 405; 2 New Hamp., 528.
There was no error in the Chancellor’s decree, and it will be affirmed with costs.