LITTLE
ROCK,
July, 1838.

LEE
and
RECTOR
vs.
ONSTOTT,
adm'r.

## LEE AND RECTOR *against* ONSTOTT, ADM. OF COLLINS.

### ERROR *to Pulaski Circuit Court.*

Every award must be final, and so plainly expressed that there may be no un-
certainty in what manner and when the parties are to put it in execution,
but that they may certainly know what it is they are ordered to do.

The award must be in accordance with the submission, and final and con-
clusive.

One partner cannot bind another by deed, even in commercial dealings.  But
this rule does not apply where one partner, by the authority of his co-part-
ner, and in his presence, executes a deed for both of them, under one seal.

A bond executed by one partner to bind his co-partner to comply with an
award, will be binding on such co-partner, if the award be accepted or rati-
fied by him.

On the 26th day of November, 1832, Doctors *Cocke* and *Lee* of the
one part, and *Pratt Collins*, the defendant's intestate, of the other,
entered into an agreement in substance as follows:   That having there-
tofore entered into an agreement to keep and furnish a livery stable in
partnership, and being unable to effect a settlement, they did, in or-
der to accomplish that object, and to avoid all difficulty, " mutually
agreed to submit for arbitration, and award all matters of controversy
between them, to final hearing and decision," of two arbitrators named
therein, with liberty to call in an umpire.   The agreement then pro-
vided that the arbitrators should take into their possession the books
relating to the business of the stable and all accounts due the stable,
and ascertain what was due from the stable; and should hear the
statements of the parties, and any evidence produced, and the state-
ments of the parties should be on oath, and each be subject to answer
interrogatories propounded by the other.   The arbitrators were then
" to make a full and final settlement, and if they give up the books to
" *Pratt Collins*, they are to say what amount he should pay or secure
" to *Cocke* and *Lee*, deducting a reasonable compensation for his trouble
" in collecting:   On the other hand, if they give the books to *Cocke*
" and *Lee*, they are to say what amount said *Cocke* and *Lee* shall pay
" or secure to be paid to said *Pratt Collins*." And the agreement con-
cluded with declaring that " every power necessary to enable them to
do ample and complete justice" between the parties, was vested in the
arbitrators and umpire, if any; that they should meet at such time
and place as they should think proper, and examine, &c, and retire
to consider of their award.   And whatever the award should be,
they bound themselves in honor to abide by it, and to comply forthwith

with its requisitions.  All private accounts between the parties were also to be taken into the estimate and settled.  The agreement concluded—"Given under our hands and seals;" and was signed " *Cocke and Lee*, (L. S.) *Pratt Collins*, (L. S.)  Immediately thereunder was another brief instrument of writing, by which each party agreed that, if either refused to abide by and perform the award, he would pay the other party the sum of fifty dollars, "as compensation covering time, trouble, and expense," which was signed, but not sealed by the two parties, as before.

On the 15th of December, 1832, the arbitrators made their award, in substance as follows: That the books and accounts should be given up to *Collins*, who should proceed to collect them, without charging any commission, and to pay, out of such collections, the debts due by the firm, and by *Cocke* and *Lee* to himself; and that he should keep an account of collections and disbursements, and submit it to the arbitrators, verified by his affidavit, for approval, alteration, or rejection.— And finally, after some matters which have no bearing on the case, they awarded, that, "so soon as the collections should be completed, and the accounts settled and approved by the arbitrators, the parties should execute general releases, &c.

On the 3d of April, 1833, *Collins* exhibited to the arbitrators an account, verified by affidavit, by which he made *Cocke* and *Lee* to be indebted to him in the sum of $76 09 cents, without stating whether he had completed the collections or not; and the arbitrators endorsed upon the account to the following effect: that, pursuant to the award before made, the account had been submitted to them, and being supported by affidavit was approved and allowed.  No further award was made.

Three days afterward *Collins* commenced suit against *Cocke* and *Lee* before a Justice of the Peace, by summons " to answer an action of account founded on award."  The Justice rendered judgment against *Cocke* and *Lee* for seventy-six dollars, nine and one-fourth cents debt, and cost, and they appealed to the Circuit Court, with Rector as their security in appeal.  After the suit was brought into the Circuit Court, *Collins* died, and the suit was revived in the name of *Onstott*, his administrator.

At the October Term, A. D. 1837, no jury being required, the case was tried before the court below and judgment rendered for the defendant; but a new trial was granted, and at October Term, 1837, it was

LITTLE
ROCK,
July, 1838.

LEE
and
RECTOR
vs.
ONSTOTT,
adm'r. tried by a jury, who found for the plaintiff, and judgment was rendered in his favor for the same amount before rendered by the Justice. On the trial the plaintiff offered in evidence the submission before referred to, the award and the supplemental award, to each of which the defendant objected, and moved the court to exclude them from going in evidence, each of which motions the court overruled, and the defendant excepted to each decision. The plaintiff, also, having neglected to prove the handwriting of either of the arbitrators to the award or the supplement, upon the trial, moved the court to be allowed to do so, after he had rested his case, and the defendant's counsel were arguing the case before the jury, which was permitted by the court; to which decision, also, the defendants excepted;—and *Cocke* having died after judgment below, *Lee*, and *Rector*, his security in appeal, sued their writ of error, and assigned for error the decisions of the court below, which were excepted to.

FOWLER, for the plaintiff in error: The plaintiffs in error contend, that a submission *under seal*, to an award, could not be admitted in that form of action. *Kyd on Awards*, 280, et seq.

That one partner cannot in any instance, without a power of attorney under seal, bind his copartner by a writing under seal. *Watson on Part.* 223.

That one partner by submission to an award cannot bind his copartner in any instance. *Watson on Part.* 445; *Kyd on Awards*, 42.

That the name of the firm, " *Cocke & Lee*," signed to an instrument under seal, and a single seal affixed thereto, could not bind the firm. *Watson on Part.* 223.

That the papers purporting to be an award, *are no award;* because the authority supposed to be given *is transcended;* because it is uncertain, indefinite, unfinished, and not final. *Watson on Part.* 446; *Kyd on Awards*, 121 et seq.—140 et seq.—191 et seq.—208 et seq.—262 et seq.—276 et seq.—216 et seq.

That such an award could not be binding on *Cocke* and *Lee*, or made the foundation of an action, until approved by them, which never has been done.

That it was necessary to prove the hand-writing or signing of the arbitrators. *Kyd on Awards*, 262 et seq.—*Peake. Evi.* p. 109.

That after said *Onstott* had rested his case, after the argument had commenced, and when the attorney of *Cocke* and *Lee* was concluding their argument in defence, before the jury, it was too late to admit

evidence of any kind;—and in *then* admitting proof of the hand- <span style="float:right">LITTLE ROCK,</span>
writing of the arbitrators was error in the court below. <span style="float:right">July, 1838.</span>

That the *execution* of the submission to arbitrators ought to have <span style="float:right">LEE and RECTOR</span>
been proved (before it was admissible in evidence) as executed by
*both Cocke* and *Lee*. Even supposing it to be the deed of *one* of them, <span style="float:right">*vs.* ONSTOTT adm'r.</span>
it is uncertain which. *Peah. Evi.* p. 109.

That upon the supposition that submission, award, and all the proceedings are regular and valid, between the parties; yet it is such an award as can only be enforced in chancery, and cannot be made the foundation for an action at law.

ASHLEY and WATKINS, *contra:*

Can one partner bind his copartner by seal? that is to say, sign the partnership name to a sealed instrument?

Suppose the other partner is by, and sees the signature of the partnership name, or afterwards owns or suffers any act to be done, by which he recognizes it to be his act and deed, is it not the same, and equally binding upon him, as if the individual names of the firm had been signed? *Gow on Part*, 75, 6, 7; 9 *J. R.* 285; 17 *J. R.* 38.

Cannot a party, by his subsequent acts, to be established by parol testimony, render a sealed instrument binding upon him, as his act and deed, which he neither executed himself, nor gave to another any power under seal to execute for him? 2 *Marsh.* 119; 19 *J. R.* 154; 2 *J. R.* 168.

But it does not appear, either in the submission or in the award, that Doctors *Cocke* and *Lee* were partners. They and *Pratt Collins* had been in partnership in the livery stable; but the partnership had been dissolved, and it was to settle the accounts of that concern, that this submission was made. But suppose Doctors *Cocke* and *Lee* were partners in the practice of medicine, or any other thing, that does not make them partners still as to the livery stable, because that partnership had been broken up and dissolved; and it does not appear that *Pratt Collins* retired, or that they carried it on together afterwards.

Now, it matters not by what name, style, or description, a party or person executes a sealed instrument, or whether he stands by and lets a friend execute it for him: it is equally binding. Nor does it matter whether the parties to a submission are described in the award by their full christian names, or by a wrong christian name, provided it be well understood who is the person meant. The award does not speak of

LITTLE
ROCK,
July, 1838.

LEE
and
RECTOR
*vs.*
ONSTOTT
adm'r

the firm of *Cocke & Lee,* or of *Messrs. Cocke & Lee,* but of *Doctors Cocke & Lee,* as two individuals well known in society by that appellation.

The submission is as broad as it could be, of all matters in controversy between the parties; that is to say, the party of the one part and the parties of the other part: it was general as to the time and place, when and where the award was to be made, and therefore to be made at a reasonable time and place. The account submitted by *Pratt Collins* was approved of the arbitrators within a reasonable time, and became immediately a good foundation for an action, if the party did not choose to resort to the submission (arbitration) *bond;* nor does the award in any respect exceed the submission; nor is the award indefinite and inconclusive.

Under our practice, when does the plaintiff rest his cause in evidence?—when does the defendant rest his cause in evidence?

After the plaintiff has rested his cause in evidence and opened the the cause in argument, and the defendant is going on with his argument, how far should the court indulge either party to introduce further testimony? clearly nothing which would tend to introduce new matter to surprise the other party; but this was no new matter, nor could surprise the other party. It only enabled one party to complete the proof of what he had already introduced, and of which the other party had full knowledge. It is a mere technical objection—a rule of practice which the Circuit Court had a right to regulate; and if there had been any thing serious in it, it was rather ground for a new trial, or motion in arrest. See 1 *Mon.* 117, 118; 2 *Littell,* 232.

In trials before Justices of the Peace, no form of pleading is necessary: they are in fact by parol, and vary according to the circumstances and the intrinsic merits and justice of each particular case. There is no distinction between the different forms of action, and all the statute requires in that respect is, that the defendant should be informed in the summons or warrant, upon what the action against him is founded. When a Justice's case gets up into the Circuit Court by appeal, it is then to be tried according to the civil law understanding of the term appeal—that is to say *de novo* upon the merits of facts as well as of law; in the same manner as if a trial had never been before the Justice.

Upon the ground of public policy, no writ of error ought to be allowed from the Superior Court to the Circuit Court in a cause under

a hundred dollars, which came up to the Circuit Court from a Justice's Court. The first appeal is nothing but a new trial: the latter appeal, or writ of error, is for matters apparent upon the record.

But the broad language of the Statute does allow an appeal or writ of error, in a Justice's case from the Circuit Court to the Supreme Court. For what errors apparent on the record will the Supreme Court reverse a judgment, in such a case? Only for errors which affect the justice and merits of the case, and not for errors, if any there be, which only affect the mode of procedure. Such a case is different from one commenced in the Circuit Court, where the common rules of pleading and rules of evidence are strictly adhered to.

CUMMINS and PIKE, for the plaintiffs in error: The plaintiffs in error still contend that the court below erred in permitting the submission to be read in evidence, when objected to; for the following reasons:

First—It is a submission under seal, and therefore cannot be offered in evidence in such an action, nor can this action be sustained upon an award made in pursuance of such a submission.

The action having been commenced before a Justice of the Peace, this court must look to the original summons to determine the nature of action. It is there described as " an action on account founded on award." An action of account is in the nature of an action of assumpsit; and a distinction is drawn by our Statutes between actions on account, and actions of debt: particularly by the Statutes of Limitations. See *Digest*, p. 381.

If the case, then, came before the Circuit Court as an action of assumpsit, it is a settled principle of law, that a submission under seal cannot be given in evidence in such actions. The point has been expressly decided in the Supreme Court of the State of Ohio, and it was declared, that the action originates in the submission, and ought to correspond in character with it; and if the submission be by deed the action should be debt or covenant;—and upon this ground it was ruled that the submission could not be given in evidence. See *Hammond's Condensed Rep.* 653, *Tullis* vs. *Sewal; 1 Saunders Pl. and Ev.* 179, 180.

Second—The submission ought not to have been allowed to go in evidence to the jury, because it was absolutely void *ab. initio*. If it be in fact a sealed instrument, it is void; because a partnership cannot

LITTLE ROOK, July, 1838.

LEE and RECTOR vs. ONSTOTT; adm'r.

LITTLE
ROCK,
July, 1838.
~~~~~
LEE
and
RECTOR
vs.
ONSTOTT.
adm'r.
execute a sealed instrument in the partnership name so as to hold the firm. Let it be even admitted that the partner who signs and seals the instrument may himself be bound by it; yet in this case *both* were not bound, and both were sued. If *Cocke* signed it, *Lee* was not bound: if *Lee* signed it, *Cocke* was not bound. It could not, therefore, be evidence in an action against both; because 'it fixed no liabilities upon both. Nor can one partner bind the firm by submission to arbitration nor by an award; and, therefore, on this ground, also, the submission is not evidence in the present case. See 2d *Saunders on Pl. and Ev.* 706, 711; 1st *Saunders on Pl. and Ev.* 185; 2d *Chitty's Gen. Practice,* 77.

The plaintiffs in error also conceive that the court below erred in permitting the two papers purporting to constitute the award to be read in evidence to the jury; for the following reasons:

*First*—that the said award was not made in pursuance of the terms of the submission, and the power thereby conferred upon the arbitrators; but the arbitrators in making the award, exceeded and went beyond the authority conferred by the submission.

The award must be strictly according to the terms of the submission, and must in no way exceed the powers conferred thereby.— *Watson on Awards,* 227; 2d *Chitty's Prac.* 105; *Watson,* 105; 2d *Johns. Rep.* 14, *Hardin,* 201.

It seems that *Collins, Cocke,* and *Lee* had been keeping a livery stable in partnership—that *Collins* had been attending the stable exclusively, and had made many bad debts, but that it was supposed by both parties that more was due to them from the stable. The parties, therefore, in order to settle and finally adjust the whole business, agreed by the submission that the arbitrators should say to whom the books should be given up, in order that the accounts due the stable should be collected; and that if they awarded the books to *Collins,* they should also award what amount of money he should pay *Cocke* and *Lee,* and *vice versa.* The arbitrators, however, not only awarded the books to *Collins,* but that *Cocke* and *Lee* should pay him seventy-six dollars, nine and three fourths cents—a most palpable and manifest exceedure of their authority.

*Second*—the award is not final and conclusive, nor does it determine the matters submitted. The first paper, which is a part of the award, reserved to the arbitrators a further power, going to the whole justice

of the award, and an indefinite time in which to conclude the award, which time does not appear even yet to have elapsed.

Every award must be final, certain, and conclusive, or it is void.— See *Watson*, 127; *Hardin*, 411; 2d *Chitty's Prac.* 107, 108. And any reservation of future powers by the arbitrators, if it affect the entire justice of the thing awarded, renders the whole void; and an award of a certain sum to be paid, &c. to be reduced to a smaller sum, if the party should make oath, &c. is void. See *Watson*, 66, 129. The first part of the award, after awarding the books to *Collins*, provided that he should go on and collect the debts, due the stable, &c. and present his accounts to the arbitrators, verified by affidavit, for approval, alteration, or rejection; and that so soon as the collections should be completed, and the accounts settled and approved, then general releases should be executed. This part of the award was made on the 15th of Dec. 1832. On the 3d day of April, 1833, *Collins* submitted an account, charging the stable with $322 93½ cents, and crediting it with $170 75 collected since the date of the first part of the award, and this account was approved and allowed by the arbitrators. It appears, therefore, that the award was not to be final until the collections were completed. Does it any where appear that they had been, or yet have been completed? Does it appear that the arbitrators ever finally adjudicated upon the matter, and definitively settled how much was due from *Cocke* and *Lee* to *Collins?* Does it appear that they ever awarded that any thing was due? None of the papers in the case state, or even enable the court to imagine what amount of debts in favor of the stable were outstanding. It may be that *Collins* at the date of the last part of the award, had not collected one half —nay, one tenth part of the outstanding debts. He presented his account and it was allowed, but the matter was not closed: no final award was made, nor is there any such award as will sustain an action. When the collections were completed, and the accounts settled and approved, then there was to be a final award, and general releases to be executed; but it no where appears that the collections had been completed, or the accounts all settled and allowed. The award, therefore, is not final. There is no award: it is void.

Were it not so, it would still be void on the other ground: that of the reservation of future power. The arbitrators were chosen for the speedy settlement of the matters in controversy. The books were given up to one party, to say what he should pay the other, and

L

LITTLE
ROCK,
July, 1838.

LEE
and
RECTOR
*vs.*
.ONSTOTT
adm'r.

there was to be an end of the matter. They chose to depart from and exceed this delegated authority. They give up the books to *Collins*, and tell him to go on and complete the collections, and when that is done they will make a final award. Was this complying with the intentions of the parties? They reserve to themselves the power, for an indefinite period of time, which does not appear to have as yet elapsed, to fix liabilities upon one party by the oath of the other; and instead of settling the business, they open the door to long and tedious procrastination and litigation.

The submission, also, provides that each party should make his statements on oath, and be subject to answer any interrogatory propounded by the other party. Yet the arbitrators assume the power of receiving the statement of *Collins*, verified by affidavit, without the other party being present, and allow and approve his accounts *ex parte*. Undoubtedly this was such a reservation of power as renders the award void. If arbitrators even examine a witness in the absence of a party, the award is rendered void. *Watson*, 74. And the award must be made in a reasonable time. *Watson*, 227. Nor must it be delivered to one party only. *Watson*, 80.

Thus, the award was not binding upon *Cocke* and *Lee*, until ratified by them, which ratification never took place; and it, therefore, cannot be the foundation of an action. A clause added to the submission, and which must be taken as a part of it, provides that if either party should refuse to abide by the award, he should pay his opponent the sum of fifty dollars as compensation, &c. This can only be considered as an express declaration of each party's right to refuse to abide by the award if he chose. If such right was reserved, the award did not become binding until the parties agreed thereto. If *Cocke* and *Lee* refused to abide by it, *Collins* had his action for the penalty, and assumpsit would lie for a revocation of the submission. *Watson*, 23.

The plaintiffs in error, also, conceive that the court below erred in permitting the plaintiff below to introduce further testimony, after he had rested his case, and to the interruption of the counsel of the plaintiffs in error, while in the final argument of their defence to the jury. That it was necessary to prove the hand-writing of the arbitrators to the award, admits of no doubt. See *Watson*, 227; *Saunders on Pl. & Ev.* 185.

There is no rule of practice better settled, and more firmly established, than that parties should go through their evidence at the proper

time, and not produce it piece meal. If it were not so, inextricable <span style="float:right">LITTLE</span>
confusion would result, and all the ends of justice be defeated. And
more especially, it cannot be allowed that one party should interrupt
opposite counsel, and introduce new testimony, while he is addressing
the jury. After parties have closed their evidence, they should abide
by it, unless some good cause exists why further testimony should be
adduced. *2d Littell*, 304. Testimony cannot be introduced at such
a time, and in such a manner, unless he shows a sufficient excuse for
having failed to introduce it at the proper time. *Litt. Sel. Cas.*
269.

LITTLE
ROCK,
July, 1838.

LEE
and
RECTOR
*vs.*
ONSTOTT,
adm'r

Should the court, however, conceive the admission of the evidence
of handwriting at such time to have been but matter of discretion in
the court below, the plaintiff in error still contends that for the reasons
above assigned, the court below erred in admitting both the submis-
sion and the award.

DICKINSON, *Judge*, delivered the opinion of the court:

This suit was commenced before a Justice of the Peace, by the
intestate, against *Cocke* and *Lee*, on an account founded upon an
award. Judgment was rendered against them, from which they ap-
pealed to the Circuit Court of Pulaski county. After the appeal,
*Collins* died, and the suit was revived in the name of *Onstott*, his ad-
ministrator, a new trial had, and judgment rendered against the
defendants, and *Elias Rector* as their security in appeal. After judg-
ment in the Circuit Court, *Cocke* died; and this cause is now brought
up by *Lee* and *Rector* as his security. Various causes for reversal are
assigned, but the principal and main question is, whether the award is
final and conclusive, and determines all matters submitted. The
award itself, upon which this action was brought, and which forms a
part of the record, states that, whereas, there are several accounts de-
pending, and divers controversies having arisen between Doctors
*Cocke* and *Lee*, of the one part, and *Pratt Collins* of the other part,
who were lately associated as joint partners, in keeping and furnishing
a livery stable in the town of Little Rock; that, for putting an end to
the said differences, they, Doctors *Cocke* and *Lee* and *Pratt Collins*, by
their certain agreement in writing, bearing date the 23d day of No-
vember, 1832, each was reciprocally bound to the other in honor, to
stand to, abide and perform and keep the award and final determina-
tion of them, the said Field and Badgett, or of an umpire, in case of

LITTLE
ROCK,
July. 1838.

LEE
and
RECTOR.
vs.
ONSTOTT,
adm'r.
their disagreement; and thereupon the said Field and Badgett farther
state that, having taken upon themselves the burthen of an award, and
having fully examined and duly considered the proof and allegations
of both parties, award "that the books and accounts relating to the
said livery stable shall be given up to *Pratt Collins*, who shall proceed
without delay, to collect the same; that out of the collections aforesaid
he shall first pay all claims against the said firm, for attendance and
necessaries furnished for the use of the stable, and deduct his own
claims for advances made for the use of the stable, over and above his
proportion; and, also, deduct any private claims he may have against
*Cocke* and *Lee*." The said *Collins* was, also, to make out an account
of all moneys collected by him, and all payments made, to be support-
ed by affidavit made, and submitted to the said arbitrators for their
approval, alteration, or rejection. They, also, award that *Cocke* and
*Lee* shall pay Mr. Stephenson for a saddle taken by them from the
stable, and which Stephenson had left there for sale; and they farther
awarded and ordered, that so soon as the collections aforesaid should
be completed, and the accounts settled and approved by them, *Cocke*
and *Lee* and *Pratt Collins* should execute each to the other, general
releases, sufficient in law, for releasing by each to the other of them, of
all actions, suits, &c. concerning the premises aforesaid.

The agreement of submission, which was offered and received in
evidence, and which forms a part of the record, purports to be executed
by *Cocke* and *Lee*, of the one part, under their joint seal, and *Pratt
Collins* of the other, also under his seal, but dated the 26th day of
November, 1832, and states "that, on the 9th day of March pre-
ceding, the parties made and signed an agreement to keep a livery
stable in partnership, on the terms set forth in the agreement; that the
partnership was dissolved, but that they could not effect a settlement
between themselves; that to accomplish this object, and avoid all dif-
ficulties, they agreed to submit for arbitration, and award, all matters
of controversy between them, to the final hearing and decision of
Messrs. Field and Badgett, with liberty to call in witnesses; that they,
the arbitrators, should take possession of all books, relating to the busi-
ness of the stable, of the said *Cocke* and *Lee* and *Pratt Collins*, on
account of the stable; that they should ascertain, as well as they could
from the parties, or otherwise, what was due from the stable to individ
uals on acount of the concern; that the arbitrators were to make a
full and final settlement. And they further authorize the arbitrators

LITTLE
ROCK,
July, 1833.

LEE
and
RECTOR
vs.
ONSTOTT,
adm'r.

to sit when and where they thought proper; and directed that all private accounts between them, should be taken into the enstimate, and settled."

The object in submitting matters of controversy to arbitrations, is for the purpose of obtaining a final and speedy determination of the dispute, with less delay and expense, than by having recourse to the ordinary tribunals of the country. Is this award final? In the submission upon which the arbitrators acted the parties were to stand to, abide and perform and keep the final determination of the arbitrators, and the submission here set forth is, that "to obviate all difficulty and effect a settlement between themselves, they agree to submit for arbitration and award all matters in controversy between them, to final hearing and decision." The award states that, after having fully examined, and duly considered the proof and the allegations of the parties, the books and accounts should be delivered to *Collins*, and that he should collect the moneys due, and pay all claims on account of the stable, and after deducting payments due him therefor, and by *Cocke* and *Lee*, make an account of all moneys collected, and all payments made. Has he done so? It is true, that on the 3d of April, 1833, he presented an account of moneys received, and struck a balance, and made affidavit that the account was just and true; but it does not appear, nor does he state, that it is an account of all moneys collected, or that he has paid all the claims due, as by the award he was bound to do. And though the account was on the 15th of April following, approved by the arbitrators; yet it does not appear from the record, that they have ever proceeded to make a final adjustment of the matters in controversy between the parties. As the intention of parties in submitting their disputes, is to have something ascertained which was uncertain before, it is a general rule, that the award ought to be so plainly expressed, that there may be no uncertainty in what manner and when the parties are to put it in execution, but that they may certainly know what it is they are ordered to do. It is to no purpose, says the civil law, that the arbitrator should pronounce an uncertain award, and the English law has, in this respect, adopted the same language. Therefore, an award that one of the parties shall pay the other for certain task work and day's work, without mentioning the sum, is void. And again: the plaintiff and defendant having certain disputes concerning a piece of land, submitted them to arbitration. The arbitrators awarded, amongst other things, that

LITTLE
ROCK,
July, 1838.

LEE
and
RECTOR
vs.
ONSTOTT,
adm'r.

the defendant should enter into a bond to the plaintiff, that the plaintiff and his wife should enjoy the land. This was held to be void, because the arbitrators had fixed no certain sum for the penalty of the bond, and there were no means by which the same could be ascertained; for it was held that they did not resemble the case of a covenant by the party himself, to enter into a bond for the enjoyment of land, in which, if no sum be expressed in the covenant, it is implied that the penalty shall be equal to the amount of the lands. See *Kyd on Awards*, 208, 194, 5th ch. 71; 2 *Saunders*, 292. The authorities are numerous and conclusive, that the award shall be in accordance with the submission, and shall be final and conclusive. This award is not final and conclusive; and the date of the submission set forth in the award, as the one from which they derived their authority to act, is different in date from the one set forth as part of the record in this case. As to the other objection, that the submission is under but one seal, being the joint seal of *Cocke* and *Lee*, the general doctrine is well settled, that one partner cannot bind another by deed, even in commercial dealings; and the reason of the rule is obvious and salutary. Sealing and delivery are indispensable requisites to the validity of a deed; and these requisites must be complied with by both, or by some one expressly authorized by the party, who does not sign, seal, and deliver. And if this was not the case, as the want of consideration under seal, cannot be inquired into, it would enable a party to give a favorite creditor a lien upon the estate of the other partner, to the great injury of the firm. This principle has been ruled in the case of *Harriss* vs. *Jackson* and *Thompson* vs. *Fearn*, 7 *Term Rep.* 207 and 10th *East*, 418; but it does not apply where one partner, by the authority of his copartner, and in his presence, executes a deed for both of them, under but one seal; for the fact of his presence, at the time of his signing, and the circumstance of treating the deed as his own, raises the inference of a construction and legal delivery against both, and under any circumstances would be valid against him who executed; for he cannot avail himself of its non-execution. A bond executed by one partner to bind his copartner to comply with an award, will be binding on such copartner, if the award should be accepted or ratified by him.

Whether the testimony before the Circuit Court was sufficient to bind both *Cocke* and *Lee*, it is unnecessary for us to determine; but that the award is uncertain, and not final or conclusive, as between the

parties, we have no doubt. We are, therefore, of the opinion that the court below erred in permitting the award to be read in evidence to the jury; and consequently the judgment must be reversed with costs, and this case remanded to the Circuit Court of Pulaski, for further proceedings to be had therein, not inconsistent with this opinion.