HAWKINS v. FIRST NAT. BANK OF HASTINGS. See Case No. 6,244.

---

## Case No. 6,244.

### HAWKINS v. HASTINGS BANK.

[1 Dill. 462;[1] 2 N. B. R. 337 (Quarto, 108).]

District Court, D. Minnesota. 1870.

BANKRUPTCY—CHATTEL MORTGAGE—FRAUD.

1. The statutes of Minnesota do not require a mortgage of chattels to be under seal, and such a mortgage executed under seal by one partner in the name of the firm, for money advanced to the firm, the other partner having subsequently given his parol assent thereto, is valid, and binds the firm.

2. A clause in a chattel mortgage by which the mortgagors were constituted the agents of the mortgagees, to dispose of the goods, and account for their proceeds, with no right or power to sell for their own use, is not inconsistent with the statutes of the state of Minnesota (Rev. St. p. 326, § 1), and does not render the mortgage fraudulent on its face.

[Cited in Johnson v. Patterson, Case No. 7,403.]

The plaintiff is the assignee in bankruptcy of the Messrs. Sproat; the defendant is the First National Bank of Hastings. The controversy concerns the validity of a certain chattel mortgage, made by the bankrupts (under the circumstances mentioned in the opinion of the court) to the bank.

C. K. Davis, for plaintiff.

L. Van Slyck, for defendant.

NELSON, District Judge. The mortgage is fair and valid upon its face. It is executed under seal by one partner, in the name of the firm, the copartner having subsequently given his parol assent thereto. There is nothing in the statutes of this state requiring such an instrument to be under seal, and the fact that a seal is attached, does not change its character or effect. 1 Metc. [Mass.] 515, and cases cited. Indeed, if a seal was necessary to the validity of such an instrument, we are satisfied that the rigid common law rule has been relaxed, and the doctrine fully sustained by modern decisions, that one partner can bind the firm by an instrument in writing under seal, when both are interested in the transaction, if there is a previous parol authority, or a subsequent parol assent to the act. 4 Metc. [Mass.] 548; Smith v. Kerr, 3 Comst. [3 N. Y.] 144; 4 Term R. 313; Skinner v. Dayton, 19 Johns. 513; 11 Pick. 400.

The consideration ($6,000) was advanced at

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the time the mortgage was executed, and credit was given upon the bank check book for the amount, less interest and stamps, and although some past due paper, held by the bank against the mortgagors and their father, was paid, I do not think there was anything in this particular branch of the transaction to indicate unfairness or dishonesty. The conditions of the mortgage are a little out of the ordinary terms of such instruments, but as the consideration was a present one, and the money received was immediately appropriated to the payment of actual indebtedness to other creditors, to an amount nearly equal to the consideration expressed, the instrument is not necessarily void on that account. The stipulations which are pressed by counsel, as indicating fraud per se, are as follows: "And it is further agreed between the parties hereto, that until said sum of $6,000 and interest shall be paid, the said parties of the first part shall remain in possession of said goods, as the agents of the party of the second part, and shall well and truly account to the said party of the second part, their assigns, monthly, for all sales made by them, of the aforesaid property, hereby mortgaged, until said sum of $6,000 shall be fully paid and satisfied, * * * the intention of the parties to this mortgage being that the sale of the property herein specified be absolute to the said party of the second part, until said indebtedness shall be fully paid, with interest; said parties of the first part only acting as the agents of the said party of the second part, in disposing of the goods hereinbefore mentioned, and accounting for the proceeds thereof, until said indebtedness is paid." These conditions do not render the mortgage void upon its face; if carried out in good faith, they certainly would not hinder, delay, or defraud creditors. The object, as expressed, was to subject the mortgaged property to the payment of the loan. This is the legitimate purpose of securities of this character, and as the mortgagors had the control of the stock of goods, there being no actual and continued change of possession, they could only rightfully dispose of it for the purpose of liquidating the secured debts. They could not sell for their own use; this would have been a fraud upon creditors, and if such permission was given by the terms of the instrument, or agreed and consented to by parol, the mortgage would be void. 4 Minn. 533 [Gil. 418]; 17 Wend. 492; 9 N. Y. 213; 13 N. Y. 577; 19 N. Y. 123; 2 Hill. Mortg. and cases cited. The possession of the mortgagors is explained by the very terms of the instrument, and is not inconsistent with good faith, within the meaning of section 1, p. 326, Rev. St. Minn. tit. "Fraudulent Conveyances and Chattel Mortgages." The mortgagees, however, must be bound by the agreement which they have entered into. They have created the mortgagors their agents, and authorized them to sell the mortgaged property, and account monthly for the

proceeds, until the debt is paid. So far as creditors are concerned, the relation of principal and agent must be sustained. The acts of the mortgagors, within the scope of their agency, must be regarded as the acts of the mortgagees, and proceeds of all sales made must be credited pro tanto towards extinguishing the debt. 28 N. Y. 360. The remaining property, or its proceeds, must go into the hands of the assignee. The books of the bank showed that the deposits made by the mortgagors, after the execution of the mortgage, and before they were closed up, exclusive of the six thousand dollars loan which had been placed to their credit, amounted to five thousand two hundred and fifty-one dollars and sixty-two cents; and although there is no direct testimony that these deposits were from the proceeds of the sales of this stock of goods, I think the presumption is strong that such was the case, as they were made in small amounts, from day to day, running through a period of nearly two months. However, the mortgage debt, in my opinion, would be extinguished, provided the sales, during the time the mortgagors were in possession, amounted to the debt and interest.

We shall refer the matter to a master and examiner, to take an account and ascertain the amount of sales, giving the mortgagee, in his report, a decree for the deficiency, if any should be found. Ordered accordingly.

[NOTE. This case was appealed to the circuit court, where the appeal was dismissed because the appellant had not complied with section 8 of the bankrupt act and general order No. 26. Case No. 6,245.]