THE MUTUAL BENEFIT LIFE INSURANCE COMPANY

*v.*

ROBERT P. BROWN and PHEBE C. BROWN.

1. The application of the maxim, that he who asks equity must do equity, is not limited to. any particular class of cases, but may be applied whenever it is necessary to the promotion of justice.

2. The opinion of experts in handwriting is evidence of low degree.

3. At common law signing is not necessary to the due execution of a deed, but it is made so by the statute of frauds.

4. But if the grantor's name is written in his presence and by his direction, it is his act, and he will not be permitted, in a court of equity, to repudiate a deed thus executed.

13

On final hearing, on bill, answer and proofs.

*Mr. Cortlandt Parker*, for complainants.

*Mr. Joseph Coult*, for defendants.

The Vice-Chancellor.

The defence in this case is forgery. The charge is not made against the mortgage sought to be foreclosed, but against a letter of attorney under which the mortgagor obtained title. The paper alleged to be false is a power of attorney purporting to be made by Robert P. Brown to Israel H. Morehouse, February 21st, 1852, authorizing him to sell the land constituting the mortgaged premises, and convey the same in fee. It purports to have been executed in the presence of a subscribing witness, who, September 15th, 1855, made oath before a master of this court that he saw Robert P. Brown, the person named therein, sign, seal and deliver the same as his voluntary act and deed, and that he (the witness) at the same time signed his name thereto as an attesting witness. Upon this proof, the paper was recorded September 29th, 1855. Under the authority thus conferred, Israel H. Morehouse, in conjunction with Mr. Brown's wife, by deed bearing date February 4th, 1856, con-

---

Note.—The construction given to the statute of frauds, is the same in equity as at law, (*Morison* v. *Turnour*, 18 *Ves.* 173, 183; *McComb* v. *Wright*, 4 *Johns. Ch.* 659, 666); and such construction must be strict, (*Delventhal* v. *Jones*, 53 *Mo.* 460, 463).

Whatever may be the rule elsewhere as to the necessity of a signature to a deed, under the statute of frauds (*Aveline* v. *Whisson*, 4 *Man. & Gr.* 801; *Cherry* v. *Heming*, 4 *Exch.* 631; *Cooch* v. *Goodman*, 2 *Ad. & El.* (*N. S.*) 580; *Armstrong* v. *Stovall*, 26 *Miss.* 275; *Herbert* v. *Turner*, 6 *Jur.* 194; *Vandenbergh* v. *Spooner*, *L. R.* (1 *Exch.*) 316; *Jeffery* v. *Underwood*, 1 *Ark.* 108; *Maule* v. *Weaver*, 7 *Pa. St.* 329, 332; *Dutch* v. *Mead*, 4 *Jones & Sp.* 427, 10 *Alb. L. J.* 336; *Thomas* v. *Caldwell*, 50 *Ill.* 138. See *Brandt on Surety.* § 75; *Browne on Frauds* § 355; 1 *Broom & Had. Com.* 725), there can be no doubt in this respect in New Jersey, under the express requirements of the statute (*Rev.* p. 444, §§ 1, 2).

As to the *place* of signing (where the statute does not require the name to be subscribed. *Davis* v. *Shields*, 26 *Wend.* 341; *People* v. *Mur-*

Mutual Benefit Life Ins. Co. *v.* Brown.

veyed the mortgaged premises to one Samuel Morehouse, who, by deed dated April 9th, 1856, reconveyed them to Israel H. Morehouse. The mortgage in suit was executed by Israel H. Morehouse and wife, to the complainants, September 20th, 1856, to secure the payment of a loan of $2,500 made on the delivery of the mortgage. On February 9th, 1859, Morehouse conveyed the mortgaged premises to Mrs. Brown, subject to the complainants' mortgage, and she continued to hold the title at the time this suit was brought.

The letter of attorney bears date a few days before Mr. Brown left this state for California, to be absent two or three years. He went to California in the hope of improving his pecuniary condition, leaving his family, consisting of a wife and two daughters, the eldest under fourteen, on the premises in question. These premises were then subject to a mortgage, made February 22d, 1851, by Mr. and Mrs. Brown to the Newark Savings Institution, for $1,400. Mr. Brown remained in California about a year and then went to Australia. While in California he wrote frequently to his wife, and sent her money at different times, amounting in the whole to $800; but, after leaving there, although he says he wrote several letters, neither his family nor his acquaintances heard anything from him or of him, and for nearly ten years he was generally believed to be dead. He returned to New-

*ray*, 5 *Hill* 468; *James* v. *Patton*, 6 *N. Y.* 9), it may be in any part of the instrument, provided an *intention* to bind the party appears. *Smith* v. *Howell*, 3 *Stock.* 349, and cases cited; *Adams* v. *Field*, 21 *Vt.* 296; *Brink* v. *Spaulding*, 41 *Vt.* 96; *Caton* v. *Caton*, *L. R.* (1 *Ch. Ap.*) 137, (2 *H. of L.*) 127; *McConnell* v. *Brillhart*, 17 *Ill.* 354; *Anderson* v. *Harold*, 10 *Ohio* 399; *Hubert* v. *Treherne*, 3 *Man. & Gr.* 743; *Kieth* v. *Kerr*, 17 *Ind.* 284; *Elliott* v. *Sleeper*, 2 *N. H.* 525; *Pequawkett Bridge* v. *Mathes*, 7 *N. H.* 230; *Zimmerman* v. *Sale*, 3 *Rich.* 76. See *Marshall* v. *Hann*, 2 *Harr.* 425.

In *Peabody* v. *Hewett*, 52 *Me.* 33, it was held that where one jointly with others signs, seals and delivers an instrument supposed to be a perfect deed, but his name appears in no other part thereof, his interest in the premises described in such instrument is not thereby conveyed. See *Frazer* v. *Ford*, 2 *Head* 464; *Whiteley* v. *Stewart*, 63 *Mo.* 360; *Stone* v. *Montgomery*, 35 *Miss.* 83.

As to the *mode* of signing, it seems well settled, both on principle and authority (notwithstanding the doubts expressed in *Browne on Frauds*,

ark in May, 1864, after an absence of over twelve years. Except $50, which he says he sent shortly after reaching there, he does not claim, while in Australia, to have attempted to contribute anything to the support of his family.

He now denounces his signature to the letter of attorney, as well as that of the subscribing witness, as spurious. When it is considered that the subscribing witness has already—at a time when he must have had a clear memory whether the transaction of which he spoke ever occurred or not and when, so far as the evidence gives any light as to his situation or position, he was without the slightest temptation to falsehood—declared upon his oath that both signatures are authentic, this charge seems bold almost to recklessness, and, in the absence of very cogent proof, must be regarded as incredible. Morehouse, the person constituted the attorney in fact, was Mrs. Brown's brother. She went to him for aid as soon, after her husband left, as she needed it. Up to December, 1858, the authority conferred by the letter of attorney was used exclusively for the benefit of Mr. Brown's family. If forgery was committed, it would seem to have been, as was aptly remarked by counsel, a pure case of vicarious iniquity. The evidence shows, I think, beyond all doubt, that $800 of the money loaned by the complainants was applied in payment of the mortgage held by

p. 12, founded on one case in which the court was divided, *Wallace* v. *McCollough*, 1 *Rich. Eq.* 426), that a signature by another in the presence and by the direction of the grantor, is a good execution of a deed. Besides the cases cited by the learned vice-chancellor, the following may be referred to:

In *Stevens* v. *Vancleve*, 4 *Wash. C. C.* 262, 269, an execution of a will by a testator having his hand guided, at his request, by a third person, was deemed valid; and see *Helshaw* v. *Langley*, cited in *Benj. on Sales* § 256; *Cozzens's Will*, 61 *Pa. St.* 196; *Vandruff* v. *Rinehart*, 29 *Pa. St.* 232; *Van Hauswick* v. *Wiese*, 44 *Barb.* 494; *Vines* v. *Clingfost*, 21 *Ark.* 309; *Riley* v. *Riley*, 36 *Ala.* 496; *Robins* v. *Coryell*, 27 *Barb.* 556; *Bailey's Case*, 1 *Curteis* 914; but see *McElwaine's Case*, 3 *C. E. Gr.* 499; 1 *Wms. on Ex'rs*, p. 101, *et seq.*

In *Rex* v. *Longnor*, 4 *Barn. & Adol.* 647, an indenture of apprenticeship (both the father and the boy being unable to write) was held binding where they desired a third person to write their names opposite two of the seals, and he did so in their presence.

Mutual Benefit Life Ins. Co. *v.* Brown.

the Newark Savings Institution, and that most of the bal-
ance, if not the whole of it, was expended in the construction
of a second house on the mortgaged premises. This second
house was built for the purpose of enabling Mrs. Brown to
rent the house she occupied when her husband left, and thus
augment her means of support. She was living in the new
house on her husband's return; he took up his abode there,
and has lived there ever since. The letter of attorney and
the complainants' mortgage were brought to his notice by
his wife soon after his return. Seven payments, amounting
together to $642, were made on the mortgage in suit after
Mr. Brown's return. They were all made by his wife, with
his knowledge, and in part with rents derived from the
mortgaged premises. She says that he said it was not right
to make them. On the 25th of May, 1866, Mr. and Mrs.
Brown filed their bill in this court, alleging that the signa-
ture of Mr. Brown to the letter of attorney was a forgery,
and praying that it might be so adjudged, and the letter
declared to be of no validity; and, also, that two mortgages,
executed by Morehouse, in December, 1858, might be set
aside. The complainants were not made parties, although
they were clearly indispensable to the perfection of the
action. No decree touching the validity of the letter could
do complete justice, such as a court of equity is bound to do

---

In *Reinhart* v. *Miller*, 22 *Ga.* 402, a marriage settlement was brought
to the door of a room where the bride was preparing for the wedding
ceremony, and she requested the bearer, in the presence of a witness,
to sign it for her. He withdrew to the yard adjoining and signed it
there.—*Held*, a good execution. See *Rhode* v. *Louthain*, 8 *Blackf.* 413.

In *Kime* v. *Brooks*, 9 *Ired. Law* 218, a daughter testified that a servant
of H. brought a bond to her father signed by H. and containing a seal
for another name, with a request from H. to her father to sign it. Her
father, by reason of infirmity, could not write, and directed her to sign
it for him; for that purpose he laid the paper on a table, and then
went out of the house. She signed his name, as she had often done
before, and delivered it to H.'s servant. The father made no objection
afterwards.—*Held*, not to be such a signing in his presence as would
bind the father.

In *Mackay* v. *Bloodgood*, 9 *Johns.* 285, one partner read and approved
an arbitration bond and consented that his copartner should execute
it.—*Held*, that such execution, in the name of the firm, by the copart-

if it acts at all, which did not bind them. *Story's Eq. Pl.*
§ 72. The effect of this omission was obviated by admissions. The bill stated that the money secured by the complainants' mortgage had been expended for the benefit of
Mr. and Mrs. Brown, on the premises in question; that they
had no wish to evade its payment, but thereby recognized
it as an equitable lien on the property, and the prayer of the
bill declared that they were willing the complainants' debt
should stand as an equitable lien on the property. These
admissions were made under the advice of counsel. That is
now urged as a reason why they should not bind the
defendants, but, in my opinion, it must be held to greatly
strengthen their force. The advice, in view of the facts,
was undeniably wise and judicious, just such as an upright
practitioner, simply desirous of using legal remedies for the
promotion of justice, would believe it to be his duty to give.
Besides, I think it may well be doubted whether an attempt
to overthrow the complainants' mortgage in that suit could,
under the circumstances, have resulted in unconditional
success. Mr. and Mrs. Brown were then in the full enjoyment of the complainants' money. The house in which they
lived was built with it, and a debt which they had pledged
their home to pay, was paid with it. The complainants had
acted cautiously. Before making the loan they had carefully

---

ner, his partner being in the store at the time, although not in his
immediate presence, was good. See, also, *McDonald* v. *Eggleston*, 26 *Vt.*
154, 156; *McWhorter* v. *McMahan, Clarke's Ch.* 400, 10 *Paige* 386.

In *Jansen* v. *McCahill*, 22 *Cal.* 563, a married woman requested her
daughter to sign her name to a mortgage, which was done in her presence.—*Held*, as valid as if it had been written by herself. See *Videau*
v. *Griffin*, 21 *Cal.* 389.

In *Hudson* v. *Revett*, 5 *Bing.* 368, a debtor conveyed his property in
trust for his creditors, but the amount of one debt, being unknown,
was left blank. The next day it was ascertained and filled in by his
attorney, in his presence.—*Held*, a good execution of such deed.

In *Williams* v. *Woods*, 16 *Md.* 220, an entry of a sale of goods made
in a blotter by a clerk of defendants' agent who stood by and directed
such entry, was considered binding on the purchaser. See *Johnson* v.
*Mulry*, 4 *Roberts.* 401; *Graham* v. *Musson*, 5 *Bing.* (*N. C.*) 603; *Durrell* v.
*Evans*, 1 *H. & C.* 174, 9 *Jur.* 104.

Mutual Benefit Life Ins. Co. *v.* Brown.

explored all the sources of information respecting titles provided by law, and, in addition, they had the assurance of Mrs. Brown, so far as she could give it by joining Morehouse in the deed, that the letter of attorney was a genuine instrument. These facts, it seems to me, would have presented a very proper case for the enforcement of the maxim that he who asks' equity must do equity. It is undoubtedly true that this rule is more frequently applied in usury cases than any other, yet its domain is universal, and it is the duty of the court to apply it in any case where its application is necessary to the doing of justice. 1 *Story's Eq. Juris.* § 64, *and note* (2).

The fact that the paper was a nullity, by reason of forgery, would not have rendered the maxim inapplicable, for formerly that was the state, by force of express statutory provision, of every mortgage founded on an usurious contract. Unquestionably, one of the main purposes of the suit just referred to was to confirm the validity of the complainant's lien, and thus avoid the resistance they would make to the relief sought in that suit. Having gained an advantage over their adversaries in the former action by means of a concession, justice and fairness would seem sternly to forbid anything like retraction or repudiation in this suit.

In *Frost* v. *Deering*, 21 *Me.* 156, a husband, at his wife's request, signed her name to a deed, several days after his own had been signed; and in her absence. It also appeared that she had subsequently stated several times that he did so at her request.—*Held*, sufficient to bar her dower. See 2 *Scribner on Dower* 276; *Powell* v. *Monson*, 3 *Mas.* 347; *Stone* v. *Montgomery*, 35 *Miss.* 83; *Linsley* v. *Brown*, 13 *Conn.* 192; *Hall* v. *Redson*, 10 *Mich.* 21; *Burns* v. *Lynde*, 6 *Allen* 305.

In *Bird* v. *Decker*, 64 *Me.* 550, an illiterate son conveyed lands to his father, and executed the deed by orally authorizing another person to sign it in his presence, afterwards duly acknowledging it.—*Held*, to be a valid conveyance. See, also, *Wood* v. *Goodridge*, 6 *Cush.* 117; *Mallon* v. *Story*, 2 *E. D. Smith* 331; *Harris* v. *Story*, *Id.* 363.

In *Pierce* v. *Hakes*, 23 *Pa. St.* 231, one witness, who was present at the transaction, testified that a married woman executed a deed by a third person taking hold of her hand and signing her name, which deed was then duly acknowledged.—*Held*, to constitute a good signing.

In *Speckels* v. *Sax*, 1 *E. D. Smith* 253, a written lease was shown and read to a woman who took a pencil to sign it, but found that her name

But is forgery proved ? The record proofs submitted by the complainant establish a perfect *prima facie* case, and put the burden upon the defendants. Mr. Brown swears that his signature to the letter is a forgery. His evidence on this point is very emphatic; if it was trustworthy it would be decisive, but he cannot be credited. His denial of his signature, made not very long ago—the authenticity of which is beyond question—of the fact that he made a mortgage to the Newark Savings Institution in 1851, and of other material facts not susceptible of dispute, show his memory to be so far impaired as to render it useless as a means of ascertaining the truth. A witness who denies, with almost imprecatory solemnity, his own acts in important transactions which he must recollect if he has any memory at all, cannot be believed in anything he affirms. The residue of the testimony on this point consists of the opinion of experts and the papers themselves. Both Morehouse and the subscribing witness are dead. Three of the experts swear they were acquainted with the handwriting of Morehouse, and they believe that the body of the letter, the signature of Mr. Brown and also that of the subscribing witness, are all in the handwriting of Morehouse. Neither of them had any knowledge of the handwriting of Mr. Brown, except what

had been already written by her brother, who had himself signed as surety for the rent. She thereupon delivered the lease, stating that she supposed he had written her name and it was all right.—*Held*, in the absence of fraud, that there was a sufficient execution to bind her.

In *Henderson* v. *Barbee*, 6 *Blackf.* 26, one *partner*, in the presence of the other, sealed a note and, with his consent, subscribed the names of both.—*Held*, to be the deed of both. See, also, *Colly. on Partn.* §§ 414, 478; 1 *Am. Lead. Cas.* *449; *Lee* v. *Onstott*, 1 *Ark.* 206 ; *Cotten* v. *Williams*, 1 *Fla.* 37. So, where one wrote the bond and the other sealed it. *Witter* v. *McNiel*, 3 *Scam.* 433 ; *Potter* v. *McCoy*, 26 *Pa. St.* 458.

The incapacity of the party executing a deed or instrument by the hand of another need not be shown (*Baker* v. *Dening*, 8 *Ad. & El.* 94); but the signing and authority should be proved by the signer. *McKee* v. *Myers*, *Addis.* (*Pa.*) 31. [See 1 *Phil. Evid.*, note 165, as to this case.] Also, *McMurtry* v. *Frank*, 4 *Mon.* 39 ; *Owen* v. *Barrow*, 4 *Bos. & Pul.* 101.

Whether an obligor authorized a third person to sign the obligation for him and in his presence, is a question of fact for the jury. *Hawk-*

they acquired by comparison. A fourth declined to express an opinion, and the fifth said he would not say the signature of the subscribing witness was in the same handwriting as that of the body of the letter, though there was considerable similarity; that his experience had shown that many persons write their signatures differently at different times, the disparity being produced by difference in position, writing materials, or condition of health of the writer, and that he thought many examples could be produced in which it would be found there was quite as much difference between the genuine signatures of the same person as there was between the genuine and spurious signatures of the subscribing witness produced for his inspection. All doubts respecting the competency of the opinion of experts in handwriting, based upon mere comparison, as evidence, have been removed by statute (*Rev.* p. 381, § 19); but it still must be esteemed proof of low degree. Very learned judges have characterized it as much too uncertain, even when only slightly opposed, to be the foundation of a judicial decision. *Gurney* v. *Langlands*, 5 *Barn. & Ald.* 185 ; *Doe* v. *Suckermore*, 5 *Ad. & El.* 751; 1 *Greenl. Ev.* § 80, *note* (2); *Stark. Ev.* 173, *note* (*e*). In this case there is a conflict of opinion; the preponderance is, however, against the integrity of the

---

*ins* v. *Chace*, 19 *Pick.* 502; *Rhode* v. *Louthain*, 8 *Blackf.* 413; *Videau* v. *Griffin*, 21 *Cal.* 389 ; *Tupper* v. *Foulkes*, 9 *C. B.* (*N. S.*) 797.

How far a subsequent acknowledgment of a deed before a magistrate, tends to cure informalities in the execution—see *Bird* v. *Decker*, *Pierce* v. *Hakes*, *supra*; *Com'rs* v. *Chase*, 6 *Barb.* 37 ; *Bartlett* v. *Drake*, 100 *Mass.* 174; *Ingoldsby* v. *Juan*, 12 *Cal.* 564 ; *Pike* v. *Bacon*, 21 *Me.* 280, 287; *Armstrong* v. *Stovall*, 26 *Miss.* 275, 282; *Linsley* v. *Brown*, 13 *Conn.* 192.

*Ball* v. *Dunsterville*, 4 *T. R.* 313 (and the same remark applies to *Henderson* v. *Barbee* and other partnership cases *supra*), often cited in support of the position that a deed is valid if executed by another under the parol authority and in the presence of the grantor, seems distinguishable, because such signing by one partner, even in the absence of his copartners, would, on proof of prior parol authority, bind all of the parties to the instrument (*Gibson* v. *Warder*, 14 *Wall.* 244 ; *Cady* v. *Shepherd*, 11 *Pick.* 400; *Price* v. *Alexander*, 2 *Greene* (*Iowa*) 427; *Day* v. *Lafferty*, 4 *Ark.* 450 ; *Mackay* v. *Bloodgood*, 9 *Johns.* 285 ; *McCart* v. *Lewis*, 2 *B. Mon.* 267 ; *Ely* v. *Hair*, 16 *B. Mon.* 230; *Swan* v. *Stedman*, 4 *Metc.*

paper; but on the other side stands the oath of the subscribing witness, and that, in this case, in my judgment, is entitled to great consideration.

But let the accuracy of the major opinion be conceded, still forgery is not proved nor the invalidity of the letter established. If Mr. Brown's signature was written by his direction, and in his presence, it is clear there was no forgery, and I think he ought not to be allowed to repudiate in a court of conscience a paper thus executed while he is in the full enjoyment of the fruits which it brought to him. At common law, signing is not essential to the validity of a deed (1 *Chit. Con.* 4; *Ad. Con.* 19), but is made so by the statute of frauds. (*Rev.* p. 444, § 1.) That requires that the person making a deed of land shall sign it in person, or by an agent thereunto lawfully authorized by writing. But the authorities hold that if the grantor's name is written by the hand of another, in his presence and by his direction, it is his act, and the signature, in point of principle, is as actually his as though he had performed the physical act of making it. *Gardner* v. *Gardner*, 5 *Cush.* 483; *Irvin* v. *Thompson*, 4 *Bibb* 295; *Ball* v. *Dunsterville*, 4 *T. R.* 313; 2 *Greenl. Cruise* 333, § 60; *Story on Agency*, § 51; 2 *Greenl. Ev.* § 295. Mr. Browne, in his treatise on the statute of frauds, seems to dissent from this view. He does not consider *Gardner* v. *Gardner* as an

(*Mass.*) 548; *Fox* v. *Norton*, 9 *Mich.* 207; *Wilson* v. *Hunter*, 14 *Wis.* 683 *Cockroft* v. *Claflin*, 64 *Barb.* 464; see *Tappan* v. *Redfield*, 1 *Hal. Ch.* 339); or, on proof of subsequent parol ratification (*Yarborough* v. *Monday*, 2 *Dev.* 493, 3 *Dev.* 420; *Fleming* v. *Dunbar*, 2 *Hill* (*S. C.*) 532; *Herbert* v. *Hanrick*, 16 *Ala.* 581; *Gunter* v. *Williams*, 40 *Ala.* 561; *Hawkins* v. *Hastings Bank*, 1 *Dill.* 462; *Skinner* v. *Dayton*, 19 *Johns.* 513; *Gram* v. *Seton*, 1 *Hall* 262; *Smith* v. *Kerr*, 3 *N. Y.* 144; *Lawrence* v. *Taylor*, 5 *Hill* 107; *Pettis* v. *Bloomer*, 21 *How. Pr.* 317; *Darst* v. *Roth*, 4 *Wash. C. C.* 471; *Holbrook* v. *Chamberlin*, 116 *Mass.* 155; *Drumright* v. *Philpot*, 16 *Ga.* 424; *Hayes* v. *Seachrest*, 13 *Iowa* 455; *Bond* v. *Aitkin*, 6 *Watts & S.* 165; *Johns* v. *Battin*, 30 *Pa. St.* 84; *McNutt* v. *Strayhorn*, 39 *Pa. St.* 269; *Gwin* v. *Rooker*, 24 *Mo.* 290; *Peine* v. *Weber*, 47 *Ill.* 41; *Lowery* v. *Drew*, 18 *Tex.* 786; 1 *Am. Lead. Cas.* *450; *Chit. on Con.* 352; *Turbeville* v. *Ryan*, 1 *Humph.* 113; *Russell* v. *Annable*, 109 *Mass.* 72); whereas an individual cannot by parol authorize another to execute a deed in his absence, nor *ratify* it, by parol, after such execution (*Smith* v. *Dickinson*, 6 *Humph.* 261; *Hanford* v. *McNair*, 9 *Wend.* 54; *Blood* v. *Goodrich*, 9 *Wend.* 69, 12

Mutual Benefit Life Ins. Co. *v.* Brown.

authority directly on the point, inasmuch as the statute under which it was decided did not, in express terms, require the authority of the agent to be evidenced by writing; and therefore says, when the question arises under a statute containing that provision, a problem of considerable difficulty will be presented. *Browne on Frauds* § 12. A person physically unable or too illiterate to write his name, may sign by making a cross, a straight or a crooked line, a dot, or any other symbol. Simply making a mark by bringing the pen in contact with the paper is sufficient. The right to sign in any of these modes cannot, in principle, depend wholly upon the question of capacity.

I do not believe the legislature intended to give any such extraordinary virtue to the mere physical act of touching a pen to paper as to mean that a deed should be valid if it was done, but invalid if it was not done, though the grantor adopted the signature made for him by a delivery of the deed and an acceptance of the consideration. The essential ingredient of the transaction, in the language of Chief Justice Shaw, is the disposing purpose, an intention, by the act done or directed, to divest himself of title and pass it to the grantee. If this is the purpose of the grantor's mind, the deed is his, though his name be traced by the hand of another.

Any rational hypothesis, fairly deducible from the evidence, which will harmonize it and further the due administration of justice, the court is bound to adopt. There is nothing in the proofs which will justify even a suspicion that the subscribing witness was controlled by corrupt motives in making the oath in proof of the execution of the letter of attorney; nor is there anything, except the opinion of the

*Wend.* 524; *Newton* v. *Bronson*, 13 *N. Y.* 587; *Videau* v. *Griffin*, 21 *Cal.* 389; *Despatch Line* v. *Bellamy Co.*, 12 *N. H.* 205; *Grove* v. *Hodges*, 55 *Pa. St.* 504); although the rule in Massachusetts is otherwise. *McIntyre* v. *Park*, 11 *Gray* 102. Compare *Rhode* v. *Louthain*, 8 *Blackf.* 413; *Hunter* v. *Parker*, 7 *M. & W.* 322; *Frost* v. *Deering*, 21 *Me.* 156; *Soames* v. *Spencer*, 1 *Dowl. & R.* 32 — Rep.

experts and the evidence afforded by the papers themselves, to show that he was inveigled, by any species of deceit, into making the affidavit. The opinions and the papers furnish evidence quite too uncertain, in view of the hypothesis suggested, to be the basis of a judgment against the complainants at this remote period and under the peculiar circumstances of this case.

The defence, in my judgment, is not proved, and the complainants are therefore entitled to a decree.